### STATE v. BETSALL.

Decided October 25, 1877.

1877.
Special Term.

1. In a criminal case where the defendant files an affidavit upon which he bases his motion for a continuance, it is not improper for the court to require the defendant to be sworn at the bar of the court, and to examine him upon oath as to the matters stated in the affidavit; and if upon such examination he shows, he is not entitled to a continuance, the court should refuse it, although the affidavit itself showed legal ground for a continuance.

2. A motion for a continuance is addressed to the sound discretion of the court, under all the circumstances of the case; and though the appellate court will supervise the action of an inferior court on such a motion, it will not reverse a judgment on that ground, unless such action was plainly erroneous.

3. If there is any evidence before the jury tending to prove a case supposed in an instruction asked for, and the instruction propounds the law, it should be given.

4. M. rents a barn from W., and for a consideration gives S. the privilege of keeping a horse and feed in the barn; there is but one door thereto, and M. and S. both carry keys to the same, and M. can take the privilege from S. at any moment; the barn is broken open and the furs of M. stolen therefrom. HELD:

   It is proper in the indictment for the house-breaking, to describe the barn as the property of M., and not the property of M. and S.

5. To authorize the granting of a new trial on the ground of after-discovered evidence, four things are necessary:

   I. The evidence must have been discovered since the former trial.

   II. It must be such as reasonable diligence, on the part of the party asking it, could not have secured at the former trial.

| | |
|---|---|
| 11 | 703 |
| 35 | 272 |
| 36 | 788 |
| 11 | 703 |
| 37 | 824 |
| 11 | 703 |
| 38 | 730 |
| 11 | 703 |
| 41 | 651 |
| 11 | 703 |
| 43 | 679 |
| 43 | 692 |
| 11 | 703 |
| 48 | 184 |
| 48 | 338 |
| 11 | 703 |
| 49 | 100 |
| 11 | 703 |
| 52 | 171 |
| 52 | 427 |
| 11 | 703 |
| 58 | 181 |
| 11 | 703 |
| 62 | 547 |
| 11 | 703 |
| 66 | 200 |
| 66 | 201 |
| 66 | 672 |

III. It must be material in its object, and not merely cumulative, corroborative or collateral.

IV. It must be such as ought to produce on another trial an opposite result on the merits.

6. As a basis for a motion for a new trial a prisoner files his own affidavit, stating therein that he was surprised on the trial of the case by the testimony of a witness sworn against him, who testified about a pretended conversation with affiant about an alleged accomplice, and that said conversation took place on a certain day ; that affiant had no such conversation with said witness on that day ; that he was not able to leave his room on that day ; that he was so much under the influence of liquor, that he did not know, and had not remembered, where he was and who was with him on said day; that he learned since the trial of a witness whose testimony is material in the case, and that he could not by due diligence obtain his testimony ; that he was not aware of the existence or materiality of his testimony, until about the time the evidence was closed; and that he had no possible means of knowing what he could prove on that point, until after the jury had rendered their verdict; and that he was then informed by a friend that two witnesses would prove substantially what was set out in their affidavits, which he tenders. HELD :

The affidavit is insufficient because :

I. It does not deny the conversation alleged to have taken place between the prisoner and the witness.

II. The only effect of the newly-discovered testimony would be to discredit the evidence of a witness on the former trial.

7. The general rule is that a new trial will not be granted, to enable the party asking it, to discredit a witness who testified against him on a former trial.

8. The testimony of an accomplice is competent.

9. A conviction may be had upon the uncorroborated testimony of an accomplice; and in such case, if the judge who presided at the trial is satisfied with the verdict, and refuses to set it aside, the appellate court will not reverse the judgment and set aside the verdict, on the ground that it rested solely on the uncorroborated testimony of an accomplice.

10. While such testimony is suspicious, and emanates from a bad source, yet the jury may believe it, although it is wholly uncorroborated; and in this state it is not proper for the court to give any instructions to the jury as to the weight of such, or any other evidence.

Writ of error to a judgment of the circuit court of Wood county, rendered on the 11th day of April 1877, upon the verdict of a jury finding Frederick Betsall guilty of house-breaking, of which he stood indicted in said court.

Hon. J. M. Jackson, Judge of the fifth judicial circuit, presided at the trial below.

JOHNSON, JUDGE, who delivered the opinion of the Court, furnishes the following statement of the case:

On the 9th day of April 1877, by a special grand jury, the defendant was indicted for house-breaking. The record of the finding shows, that the special grand jury " presented an indictment against Fred. Betsall, for house-breaking, a true bill." Signed, G. J. Hopkins, foreman. The whole record, showing the impanelling of the grand jury, is in all respects regular.

The indictment, with the indorsements thereon, is as follows:

"STATE OF WEST VIRGINIA, WOOD COUNTY, TO-WIT:
"In the Circuit Court of said County:

"The grand jurors of the state of West Virginia, in and for the body of the said county of Wood, and now attending the said court, upon their oaths present, that Fred Betsall, on the fifteenth day of March, in the year of our Lord one thousand eight hundred and seventy-seven, in the said county, did feloniously break and enter a certain out-house called a barn, and used and occupied as a ware-room, the property of one W. P. Maddox, and not adjoining to or occupied with the dwelling house of the said W. P. Maddox, with the intent, the goods and chattels of the said W. P. Maddox, in the said out-house, called a barn, and used and occupied as a ware-room, then and there being feloniously to steal, to take, and carry away *and* sixteen opossum skins of the value of four dollar ($4.00), and thirty-five skunk skins, of the value of twenty dollars ($20.00), of the value of twenty-

89

four dollars ($24.00) of the goods and chattels of the said W. P. Maddox, in the said out-house, called a barn, and used and occupied as a ware-room, there and then being found, did feloniously steal, take and carry away, against the peace and dignity of the state.   Upon the information of Bur Harden, Chas. H. Woods, and De L. Davis, sworn in open court, and sent to the grand jury to give evidence on this indictment.        "D. H. LEONARD,

Indorsed:                    "Prosecuting Attorney."

"J. G. HOPKINS,
          "Foreman."

On the 9th day of April 1877, to the indictment the prisoner pleaded "not guilty," and for reasons appearing to the court, the cause was continued until the Thursday next thereafter.   On the 12th day of April the prisoner was tried by a jury upon the charge in the indictment. and by the jury found guilty, and the term of his imprisonment in the penitentiary fixed by them at two years, And thereupon the prisoner by his counsel moved to set aside said verdict, on the ground that it was contrary to the law and the evidence, and because of after-discovered evidence.  Which motion was overruled by the court, and the prisoner excepted.

The prisoner, by his counsel, tendered four several bills of exceptions to the ruling of the court, which were signed and made a part of the record in the cause.   They are as follows :

### Exception No. 1.

"Be it remembered, That on the trial of this cause, the State, to maintain its prosecution, proved that the barn referred to in the indictment as being broken and entered, was, on the 12th day of March 1877, in the joint use and occupation of W. P. Maddox and J. H. Spence. The said Maddox testifying (no one testifying to the contrary) that he rented the barn from one Woodruff, to whom he paid the rent for the same himself, and that he rented his meat shop to Spence.   He hired to him

the privilege of keeping his horse and feed in said stable, for which he paid him; that said Spence had a key to the door, as well as himself, there being two keys to the lock; that said Spence was there at his pleasure; and that he could take the privilege from him at any moment; that the stable or barn was entirely under his control and in the actual possession of him, said Maddox; and there was only one outer door or entrance to the said barn. And thereupon the prisoner, by his counsel, moved the court to instruct the jury as follows: "If the jury believe from the evidence, the house, alleged to have been broken and entered by the prisoner, was, at the time of the alleged commission of the offense, in the joint occupancy and possession of William P. Maddox and J. H. Spence, and did not belong to the said W. P. Maddox alone, as charged in the indictment, and that the said Spence had one-half of the said house by virtue of an agreement to pay one-half of the rent for the same; and if they further believe that there was only one door or entrance to said house, and that the same was the common entrance of said Maddox and Spence to said house, then they must find the prisoner not guilty of the house-breaking charged." But the court refused to so instruct the jury, to which opinion of the court in refusing to give said instruction No. 1 the prisoner by his counsel excepted; and this his bill of exceptions tenders, and prays that the same be signed, sealed and saved to him, and be made a part of the record in the cause."

## Exception No. 2.

"Be it remembered, That after the jury had returned their verdict in this cause, the prisoner moved the court to set aside the verdict and grant him a new trial, on the ground that the same was contrary to the law and the evidence given in the case. But the court overruled the motion, and refused to grant a new trial, and therefore the prisoner prayed the court to certify the facts

proved on the trial as follows: It was proven that the prisoner the night of the 12th of March 1877, was seen at two saloons at Parkersburg, drinking in company with one Charles Woods and others; that they drank liquor six or more times at Wagoner's, and the same number of times at Phillips's house, between the hours of 9:30 o'clock and one o'clock of the same night; that the prisoner and said Woods met on Washington street in the city of Parkersburg, in Wood county, about nine o'clock in the evening, and went together to Wagoner's saloon, and stayed there about one hour and left together, and in about one hour afterwards came together at the Phillips house, on Ann street, and remained together there for some time, and were seen together until about two o'clock A. M., on the same night the offense was committed. And the said Charles Woods, who also stands indicted for the same offense as that charged against the said Betsall, and claimed to be an accomplice with the prisoner, testified that after he and the prisoner drank at Wagoner's saloon, that the prisoner suggested to Woods that Maddox kept furs in his stable or barn, and that they went down the alley from Washington street to the stable or barn; that this was about half-past ten o'clock at night, and after they had left the house of said Wagoner; that the prisoner went to the door (the only door to the stable or barn,) and pulled out the bottom of the door; that the said Woods also took hold of the door and held the door out from its place, creating a place large enough for the prisoner to enter the barn; that the fastening on said door was about the centre of the door from the top to the bottom, and that by pulling out said door at the bottom, the lower hinge was sprung or bent; that the prisoner did enter the barn, and got and handed out to him (Woods) a skunk fur; that he next handed him out a bag in which he put the furs; that he then handed out other skunk furs, and sixteen opossum furs which were put in the bag; that the prisoner did not come out through the said door, but got out at another part of the

barn by breaking out a place which had been sealed up; that Woods tied up the bag; that he took the bag, and the prisoner told him to go down the alley to the Kanawha river bridge, and that prisoner would go down Market street and watch for the police; that in accordance with this Woods went down the alley to the river, and there he met the prisoner; that Woods threw the bag of furs behind a log, and that he and the prisoner went down Kanawha street to the Swan house; failing to get a drink there, they went to Phillips's house and there met Jake Bradford and John Haley, when they drank as herein before stated, and remained there until about half past one o'clock; from the Phillips house they went up Ann street, and then up Court street to a saloon on the north side of the court house, and failing to get in there to get drinks, Woods and the prisoner then separated from Haley and Bradford, and then went down where Woods said that they placed the bag of furs; that the said Woods was the only witness who testified to seeing the prisoner enter said barn as hereinbefore stated. It was also stated by Woods that in a conversation in the jail with Moses Jones, who had been sentenced to the penitentiary, that he told Jones that if he, Woods, went to the penitentiary, others would go with him; that said conversation was carried on in a joke with the said Jones who had just been sentenced. It also appeared in evidence, that Jake Bradford and Haley were with Betsall at the Phillips house, and came to the court square with them. The said Woods also testified in substance, that he and the prisoner then went from the place, where he had left the sack, up the railroad to the house of one Skinner, but that the prisoner did not go to or in the house of Skinner, but remained outside. That Woods went into the house and then came out; that he and the prisoner then went up the railroad to a place near a refinery, where they separated; that the prisoner told Woods to do what he pleased with the furs, either to take and sell

them and give prisoner half of proceeds of the sale, or throw them in the river, as he was sick and going home; said Woods also testified that he went back to Skinner's house the same night, and the next morning he boxed up the furs, and carried them over to Belpre, Ohio, from which place he shipped them to Logan, Ohio, to a friend of his; that he afterwards went to Logan and sold the furs, and mailed five dollars of the proceeds of the sale in a letter directed to the prisoner, which the prisoner informed him since his arrest, and since having been brought back to this State that he did not receive. And the said Woods on cross-examination, denied having been at one Richard Davis's on Monday, 12th of March aforesaid, and denied getting at the house of Mrs. Davis a sack or bag. And it was further proven that the door of said barn was in fact found in the morning after the alleged breaking, to have been wrenched and sprung as stated by said Woods; and that the stable described by said Woods was found broken, as by him also stated; it was further proved that before the night of breaking, said stable door was not sprung, nor the hinges bent, nor the fastenings of the hinges loose; but that said door was sound in said respect. It was also testified by Mrs. Rachel Davis, that the bag which was exhibited on the trial was her sack; that it was one which said Woods had taken from her house about dark on the night of 12th of March 1877; that Woods had come to her house about ten or eleven o'clock on that day, and stayed until about dusk; had asked for the sack, and took it off the barrel, folded it up and took it away with him, saying he wanted it to put chickens in; that the said witness said she could not specify any marks on said sack to identify it, except that it had stripes on it and it was dirty; and it was also proved by the daughter of said Rachel Davis, that a sack had been gotten from her mother; but the same was a new sack but had been used. It was also proved by Maddox that the sack was found at the house of Skinner, with one skunk fur in it, and

that it was not his sack, but it looked like a sack which had been left in the barn, and which he had seen in the barn a few days before it had been broken open. One Dittman testified substantially to the same matter, as to the sack being similar to the one used by him at the barn; and he believed it to have been in the barn for some days before the stable was broken open. He believed it to be one he had seen there, for he had used it wiping verdigris from a horse's foot, and the sack had grease spots on it similar to the one before the jury; and while he would not swear positively that it was the same sack, he had no doubt of its being the same one he had used. And one John Haley also testified that the next day after the alleged house-breaking he met the prisoner at the court house, and asked him where Woods was; and the prisoner replied that he had gone to Columbus to sell some furs. It was also testified to by the said Woods, that he had told the said prisoner the night before, that he was going to Columbus, Ohio, and that he did not go away from Parkersburg until some time on the 13th of March 1877, when he took away the furs from the house of Skinner. And it was also proven that the said Woods was known by several different names, and that the prisoner had been seen with Woods and had known him for some time; and that the prisoner knew Woods's name, and that on the night of the alleged breaking had called him by another and different name than Woods. And it was also proven that the said barn was, on the night of the 12th of March 1877, situated in Parkersburg, Wood county, West Virginia; and that it was situated on an alley in the rear of a butcher shop of the said Maddox; and that said Betsall had been, up until a week or such matter of the alleged breaking, in the employ of the said Maddox, and had been frequently with said Maddox in said barn, and had seen furs there, which said Maddox had purchased and afterwards sold, and knew that said Maddox kept his furs there until he sold them; but it did not

appear he had seen these furs prior to the date of their being taken. It was also proved the said furs were variously estimated from $13.35 to $24.00 in value ; and these were all the facts proved on the trial. And to the opinion of the court overruling said motion to grant a new trial, the prisoner, by his counsel excepted, and this his bill of exceptions tenders, and prays that the same may be signed, sealed and saved, and made a part of the record in this cause, which is accordingly done."

### Exception No. 3.

"*Be it remembered*, That on the calling of this cause, the prisoner moved the court to continue this cause, and in support of his motion, offered his affidavit in these words and figures following, to-wit :

This day, Frederick Betsall, above named defendant, personally appeared before the undersigned, and made oath that he cannot safely go to trial at this time ; that he has material witnesses, who reside in Washington county, Ohio, at Marietta, whose testimony is material to him on the trial of said case ; that he has made efforts to obtain their evidence by their personal appearance here this term ; that he has assurances that if he has an opportunity until next term, he will be able to have the said witnesses in attendance ; that the State relies mainly on the testimony of one Charles Woods, who is indicted for the same offense as affiant; that it is claimed that the said Woods was a confederate with the affiant in the commission of the offense charged in the said indictment; that affiant, in the most emphatic terms, denies that he had anything whatsoever to do with the commission of said offense; and he says that he cannot proceed to trial without said testimony; that he cannot prove the facts he desires by any other witnesses in the knowledge of affiant.

"FREDERICK ☒ BETSALL.
his
mark.

"Taken, subscribed and sworn to before me in open court, the 12th of April 1877.

"LAW. P. NEAL, *Clerk*."

Thereupon, on the reading of said affidavit, the court interrogated the prisoner on oath, at the bar of the court, as to the matters set forth in said affidavit. When he stated that he had taken no steps to obtain the attendance of said witnesses residing in Marietta, Ohio; that said witnesses resided in said city of Marietta, in the State of Ohio, and that it was only twelve miles from the court house of Wood county; that he had a father and brother residing in Parkersburg, who were able to go for said witnesses, and secure their attendance, if it could be done; but that he has not asked them to go for him, or any one else, to see if the attendance of said witnesses could be procured; that he had taken out no subpœna whatsoever for said witnesses, nor has he any reason to suppose that if the case was continued, that said witnesses could be produced on the trial of the case, except that his counsel had told him they could be got; and the court doth certify that after the grand jury for the spring term 1877, of the said court had been discharged, the said prisoner and said Woods were committed to the jail, charged with the offense of house-breaking; and that at their request, the court caused a special grand jury to be summoned, so that they could be indicted and tried at the present term of the court, rather than lie in jail all the summer, until the next term of the court, which is in September; that the grand jury was directed to be summoned for Monday, the 9th day of April 1877, when the prisoner was indicted for the offense as alleged in the indictment; that immediately on said indictment being presented against him, the court caused the prisoner to be brought into court on the same Monday, in order that he might have notice and prepare for trial; and thereupon the prisoner entered his plea of not guilty, at which time the trial was set for the following Thursday; that the prisoner stated in open court that he would be ready for trial on said Thursday, the 12th day of April 1877, to which the case was laid over, in order that he might procure such witnesses as he might

*1877.*
Special Term.
_____

State
v.
Betsall.

desire, and prepare for his trial. The court doth further certify that ample time was given him to obtain witnesses from Marietta, Ohio, twelve miles distant, if they would come, as there is communication by railroad several times a day, between Parkersburg and Marietta ; that said witnosses could only be procured by personal solicitation, as the court had no power to compel the attendance of witnesses from the state of Ohio, on the prisoner's behalf. The court doth certify that when the case was called for trial on said Thursday, the 12th day of April 1877, the said prisoner presented the said affidavit, and that the same was considered along with the facts set out in this bill of exception by the court. Whereupon the court overruled said motion to continue the case. To which opinion of the court refusing to continue the case, the prisoner, by his counsel, excepted ; and his bill of exception tenders and prays that the same may be signed, sealed and saved to him, and made part of the record in this cause, and the same is done."

### Exception No. 4.

" Be it remembered, That the prisoner, after the verdict of the jury had been rendered, moved the court to set aside the verdict and award him a new trial, on the ground of the after-discovered evidence, as set forth in his own affidavit and the affidavit of Rosa Wires, of such facts so discovered. The affidavits are in the words and figures following, to-wit, hereinafter copied. And the prosecuting attorney tendered five several counter affidavits: J. M. Baker, J. H. Spence, W. P. Maddox, Rosana Bowers, and Bur Harden, in the words and figures following, to-wit, hereinafter copied. And the prisoner also offered the affidavit of Rachel Davis, in the words and figures following, to-wit, hereinafter copied. But the court overruled said motion, and thereupon the prisoner excepted, and this his bill of exception tenders and prays that the same may be signed, sealed, and saved, and made part of the record in this cause, which is so done."

The affidavits of the prisoner and Rosa Wires are as follows:

" This day Frederick Betsall, above named, made oath before me that he was surprised, on the trial of the case aforesaid, by the evidence of one John Haley, who testified about a pretended conversation with affiant before the court house, concerning the party Charles Woods, an alleged accomplice, and that such conversation took place on the 13th day of March, 1877. Affiant says that he had no such conversation with said Haley on the ―― day of March, 1877, that he was not able to leave his room on that day, but that he was too much under the influence of liquor; that he did not know, and had not remembered distinctly where, and who was with him on the 13th of March, aforesaid. That he learned since the trial closed, that he has a witness whose testimony is material in this case, and that he could not by due diligence obtain his testimony; that he was not aware of the existence of the testimony, nor of its materiality, until about the time the evidence was closed. And that he had no possible means of knowing what he could prove on that point, until after the jury had rendered their verdict; and then he was informed by a friend that witnesses whose affidavits are taken, Rosa Wires, and also Mrs. Bowers, one of the neighbors, can prove substantially the facts set forth in her affidavit. And he further says that he used due diligence to obtain this testimony for his defense against the fatal and malicious testimony of the said Charles Woods."

" This day Rosa Wires personally appeared before the undersigned, and make oath that she is well acquainted with the prisoner; that on the night of the 12th of March 1877, the prisoner called to her house about between eleven and twelve o'clock, very much intoxicated, and stayed all night; that he had been boarding at her house for some months, and that on the 13th day of March 1877, prisoner was so much under the influence of his spree, that he did not leave or go away from ―― house until Monday morning; that on Tuesday, the 13th,

she went out and got liquor for him at his request, and she is positive the prisoner did not go away from her house before Wednesday morning ; that affiant has been an invalid for several weeks, unable to go to the court house to give evidence; that she did —— inform the prisoner's counsel of what she knew, as aforesaid, until the 14th day of April 1877, after the trial had closed."

On the 14th day of April 1877, judgment was entered upon said verdict of the jury, to which judgment a writ of error was granted.

*John A. Hutchinson*, for the prisoner :

1st. (*a.*) The continuance should have been granted as set out in exception No. 3. The affidavit of plaintiff in error was sufficient for the purpose; and no artifice of the prisoner appeared to justify the belief that the purpose was delay. *Whitey* v. *State* 38 Ga. 50 ; *State* v. *Frazier*, 2 Bay 96 ; *State* v. *Lewis*, 1 Bay 1.

(*b.*) The court erred in considering, upon the application for continuance, the facts which it certified as existing within its own knowledge; not proven in the presence of the prisoner.

These facts, if pertinent, ought to have been adduced orally before the court in presence of the accused. How was he to know upon what information *of fact* the court would act, in the determination of the motion ?

*Facts* shown to the *court*, as well as those personally within the knowledge of the jury, must be given in the cause under the sanction of an oath, in the presence of the prisoner : Cooley's Const. Lim. 318 side page ; *Jackson* v. *Corn*, 19 Gratt. 656 ; *Wade* v. *State*, 12 Ga. 25.

The Constitution of this State, article III., §14, requires that the witnesses against the accused shall confront him ; that he shall have a reasonable time to

prepare for his defense. These guarantees were not secured to the plaintiff in error.

2d. The instruction set out in bill of exceptions No. 1, ought to have been given to the jury. It correctly stated the law.

It was for the jury to find from the evidence whether there was such joint ownership of the house or barn as made a variance from the description of it in the indictment. If such variance was found it was material: East. P. C. 499 ; 1 Am. Cr. Law §595; 2 Rus. on Cr. 86 ; 2 Am. Cr. Law §1822; 2 Am. Cr. Law §1833; 2 Am. Cr. Law §1610 ; *Hughes's Case*, 17 Gratt. 565.

3. The verdict was contrary to the evidence. The only testimony as to the commission of the offense was that of the pretended accomplice Charles Woods.

Russell 2 vol, 960, says : " It has long been considered as a general rule of practice that the testimony of an accomplice ought to receive confirmation, and unless corroborated *in some material part by unimpeachable* evidence the judge should advise the jury to acquit." *Ibid* 962.

The corroboration must be on some point which *connects* the prisoner with the charge: *Ibid* 963 ; *Rex* v. *Webb,* 6 C. & P. 595 (25 Eng. Com. L.); *Rex* v. *Addis,* 6 C. & P. 388, (25 Eng. Com. L.); *Rex* v. *Farler,* 8 C. & P. 10634 (25 Eng. Com L.); *Rex* v. *Stubbs,* 33 Eng. L. & Eq. 552 ; 1 Whar. Am. Cr. Law §789 (7th ed.)

It will be impossible for the most astute mind to find in the evidence certified, in exception No. 2, anything *material* to the charge, and which *directly* or *indirectly connects* the accused with it, corroborative of anything testified by the alleged accomplice, Woods. This exception shows that Woods was contradicted in several material particulars by other witnesses.

It will appear by the record, that the prosecution deemed it sufficient matter of corroboration, to prove that the stable had been broken open and the furs stolen ; but, as the judges in the cases cited say, this is not corroboration in *material* matters.

1877.
Special Term.

State
v.
Betsall.

What does it prove towards connecting the accused with the charge, to show that the stable *was* broken and the goods stolen? Of course the thief who did commit the crime, and who comes forward to implicate another, will be able to swear to mechanical circumstances, to show that an offense was committed; but this does not advance the proof of the guilt of the accused. These distinctions are clear in all the authorities: *Rex* v. *Webb*, 6 C. & P. 25; Eng. C. L. 595; *Com.* v. *Bosworth*, 22 Pick. 397.

4th. (*a*). It was error not to grant a new trial on the ground of after-discovered testimony. Bill of exceptions, No. 4.

It was important testimony to be considered by a jury, and would doubtless have changed the result of the trial, had the accused had the benefit of the evidence, he discovered after the trial had closed: *Reed's Case*, 22 Gratt. 924, 946.

(*b*). It was error to permit the State to introduce, in opposition to the motion for a new trial on the ground of after-discovered evidence, the counter-affidavits, made part of exceptions No. 4. The prisoner must be confronted by the witnesses at every stage of the proceedings calculated to deprive him of life or liberty. Prepared evidence, by deposition or affidavit, is never admissible against the accused, in a case involving life or liberty, in this State. These privileges are too sacred to be taken away upon mere affidavits: *Jackson's Case*, 19 Gratt. 656.

But, the value of the grounds for the motion was to be determined by the facts the prisoner brought before the court. Whether the witnesses, upon whose testimony the accused was seeking a new trial, were worthy of credit or impure, was not a question to be passed on summarily by the court. It was not involved in the motion.

The affidavits, thrust in by the prosecution, go to the

extent of impeaching the chastity of the witness, Rosa Wires, whose testimony was after-discovered.

The court seems to have given weight to these counter-affidavits, to the prejudice of the prisoner. Had the prisoner consented in open court to the reading and consideration of these affidavits, it would have been in violation of constitutional right, which he is not permitted, in a felony case, to waive: *Rex* v. *Foster*, 7 C. & P. 495; 3 Whart. C. L. §2997; *Maurer* v. *People*, 43 N. Y. 1.

The Attorney General cites: §3164, 3 Whart. Am. C. L. This action is founded in certain civil cases, not a criminal case can be found in which such practice is admitted.

In *Grayson's Case*, 6 Gratt. 712, so far as Judge Scott stated the rule applicable to a motion for a new trial, because the verdict was contrary to law and evidence, it may be correct; but Judge Lomax would not go that far, and the case is not in point on a motion based on after-discovered evidence: *People* v. *Lambert*, 5 Mich. 349, where in "criminal" proceedings it was held, that the prisoner must be confronted with the witnesses against him: *People* v. *Dray*, 6 Col. 248; *Hooker* v. *Com.*, 13 Gratt. 763, per Samuel Judge; *People* v. *Jones*, 24 Mich. 215.

The Court no doubt will observe the zealous conduct of the policeman Baker, who made two of the affidavits in the record. The affidavit of Rachel Davis plainly shows that Baker was seeking to keep away important testimony, which the prisoner was entitled to.

Notwithstanding this, the prisoner is deprived of his constitutional guarantees, and suffered to be degraded and punished upon the uncorroborated testimony of a pretended accomplice.

There was no *finding* that the indictment was "a true bill."

*Attorney General*, for the State:

A motion for continuance is addressed to the sound

discretion of the court; and unless it *clearly* appears to the court in this case, that this discretion was improperly exercised by the court below, the case should not be reversed, because of the refusal to grant the continuance asked for: *Smith* v. *Commonwealth*, 2 Va. Cases 6 ; *Bledsoe's case*, 6 Rand. 673; *Russell* v. *Commonwealth*, Va. Ct. of Ap. reported in Va. Law Journal for July 1877 ; 17 Gratt. 629, *Hewitt's case*.

The court below, upon the motion to continue, could clearly, consider not only the affidavit of the prisoner, but the statement made by the prisoner upon his voluntary oath, (voluntary, because he could have refused to have made it), and also whatever may have taken place in open court, in the presence of the prisoner, as to the trial of the case; and it is therefore submitted, that leaving out of view " the facts and circumstances " which it is complained the court " assumed to exist," the court did not err in refusing the continuance asked for.

Without these " facts and circumstances " referred to, which it is claimed were not proved or established, on the hearing of the motion, in the *presence* of the prisoner, how stood the facts as shown by the record ?

At the request of the prisoner, a special grand jury had been summoned. He was indicted. This was on Monday. He then stated in open court that he would be ready for trial on *Thursday*. For his accommodation the trial was postponed until Thursday, in order that he might prepare for the trial and have his witnesses, if any he had, then in attendance. Thursday arrived. He moved for a continuance, relying alone on his own affidavit that there were witnesses in Ohio, whose testimony he says was material. He had issued no subpœna. He had taken no steps to procure the attendance of witnesses. So far as it appears, he knew their materiality upon Monday as well as he did on Thursday. His father and brother, residing in Parkersburg, were able to go for the witnesses, only twelve miles away, yet they

were not even asked to go, nor was any one else asked to see whether their attendance could be procured. No fact was stated or reason given why he could ever hope to procure their attendance.

The oath, that he made, contradicts directly the statement of his written affidavit, in so far as he therein states that he had made efforts to obtain the attendance of the witnesses and that he had assurances that he would be able to procure their attendance at a future term.

Did the court err upon such a state of the case in refusing a continuance? It is submitted that it did not. 2 Va. Cases, 156. 5 Leigh 715. 1 Rob. R. 591. 10 Gratt. 683. 6 Rand. 704. 9 Leigh 639. 8 Gratt. 696.

It will be observed that " alleged facts and circumstances set forth in the bill of exceptions, beginning with the paragraph 'and the court doth further certify,' " add nothing in effect to the facts otherwise shown in the exception.

It fully appeared to the court, otherwise in the case (by the affidavit and oath of the defendant), that his witnesses resided in Marietta, Ohio, only *twelve* miles distant from Parkersburg ; and it was known to the court and the prisoner that the case had been laid over from Monday in order to give him time to prepare for trial, and that the court could not compel the attendance of said witnesses.

As to the first exception : It is submitted that the court should have refused the instruction asked for, because :

1st. It tended to confuse the jury.

2d. It was not authorized by the testimony.

3d. Because, under the law, the testimony sufficiently proved the description in the indictment. Code of W. Va., page 714 sec. 7. 2 Am. C. Law, (Wharton, 6th ed.), sections 1577, 1583, 1588.

As to the second exception : Admitting for the sake of argument, the rule in England and this country too, to be as claimed for the defendant, that a prisoner can-

not be convicted upon the testimony of an accomplice, unless that testimony was corroborated in some material part by unimpeachable testimony, could not the jury, the judges of the law and testimony, have well believed, from the testimony before them, that Woods was corroborated in some material part by facts connecting the prisoner with the charge?

The prisoner was familiar with the barn, knew that Maddox kept furs there; he was intimate with Woods, so intimate that he called him by some other name than Woods; on the night of the alleged commission of the offense charged, the prisoner and Woods met in the street about nine o'clock, P. M.; they went to Wagoner's saloon together, drank together, were there about an hour, left together, *and in about an hour afterwards* came together at Phillips's house, drank there together, remained there together for some time, and were seen together till about two o'clock the next morning; the stable was broken into, the furs were stolen, and the prisoner the next day, when Haley inquired of him about Woods, told him that Woods had gone to Columbus *to sell furs*.

To use the language found in 2 Russell on Crimes, page 968, I ask, could not the jury "reasonably infer" from the testimony, that the prisoner "was concerned with the accomplice in the commission of the crime."

Russell, on page 960, lays down the English rule to be, "that if credit be given to the testimony of an accomplice, it requires no confirmation from another witness," and "therefore, if the jury believe the evidence of an accomplice, they may legally convict a prisoner upon it, though it stands wholly uncorroborated." See also Russ., 962.

But in *practice* this doctrine became so modified, that the judge would advise the jury to acquit, if the testimony of the accomplice wanted confirmation.

It was not a question of *law*, but of practice in the courts: 2 Russ. 950. *Rex* v. *Stubbs*, 33 Eng. Law and Eq. 552-3. 1 Am. C. Law, section 789, 6th ed.

1877.
Special Term.

State
v.
Betsall.

Wharton in his American Criminal Law, vol. 1 section 783, says "the preponderance of authority in this country is that a jury may convict a prisoner on the testimony of an accomplice alone, though the court may advise an acquittal, unless such testimony is corroborated on material points."

The court was not asked to instruct the jury as to the weight to be given to the testimony of *an accomplice.*

It is therefore submitted that this Court ought not, after a conviction had upon the testimony given, without any interference by the judge below, or without his being asked for any instruction, and when he refused a new trial, now reverse the case and grant such new trial to the prisoner.

As to exception No. 4: Leaving out of view the counter affidavits tendered by the prosecuting attorney, was it error to overrule the motion for a new trial founded upon the affidavits of Rosa Wires and the defendant?

After-discovered evidence, in order to afford proper ground for a new trial, must possess all of the following qualifications:

1st. It must have been discovered since the former trial.

2d. It must be such as reasonable diligence upon the part of the defendant could not have secured at the former trial.

3d. It must be material in its object, and not merely cumulative or collateral.

4th. It must be such as ought to produce on another trial an opposite result on the merits.

5th. It must go to the merits.

6th. In addition to these qualifications, the name of the witness should be given, and what prisoner expects to prove by such witness must be stated.

7th. It is generally necessary that the motion should be accompanied by the affidavit of the newly discovered witness: *Reed's case,* 22 Gratt. 946; 3 Am. C. Law (Wharton) sec. 3161; 8 Gratt. 637.

Test the affidavits of the prisoner and Rosa Wires by these essentials.

Could not the defendant, by the use of reasonable diligence, have secured the testimony of Rosa at the trial?

He swears, it is true, that he was so much under the influence of liquor that he does not distinctly remember "where he was or who was with him on the 13th of March" (the day Haley says that he told him at the court house that Woods had gone to *sell furs*); and yet he remembers and swears that he had no such conversation with Haley. He swears that he was not away from his room at all that day.

Rosa swears that he boarded at her house (it was his home); that he was there all day Tuesday 13th, and that, *at his request*, she went out and got liquor for him.

It seems, therefore, from these affidavits, that though sick because of his spree, he had mind enough to send for liquor, and memory enough to recollect where he was all that day: "in his room."

Haley's testimony referred to a conversation at the court house, on that day, and if Rosa's testimony was only wanting to contradict Haley, and thus "have changed the result of the trial," is it not strange she was not even thought of? Could not reasonable diligence and enquiry have secured her presence? The prisoner could swear that he was at her house, in his room during all that day, yet, with Haley's testimony pointing directly back to the day, he made no effort to seek to contradict it ; no effort to show where he was that Tuesday. It does not even appear that he informed his counsel of his whereabouts on that day, or even that his counsel made any inquiry about it, though the prisoner was so "surprised" at the trial by the testimony of Haley, and not the slightest effort was ever made to rebut the effect of Haley's testimony.

It is complained that the court below violated some "constitutional right" of the prisoner, in hearing the the "counter affidavits" referred to in said exception.

It will be observed that no objection was made in the court below, so far as the record discloses, to the hearing or consideration of these affidavits, and it is submitted whether the Court will now here, for the first time, permit objections to be made and decide them !

So far as I can have access to the authorities, referred to by defendant's counsel, or have been able to examine the question he seeks to raise as to those affidavits, I find no case tending to sustain the novel proposition that the State cannot, upon a motion for a new trial, upon the ground of after-discovered evidence, introduce counter affidavits to those introduced by the defendant.

The "constitutional right" of a prisoner to be confronted by the witness upon every *trial*, before a jury of twelve men, is a "sacred right," and upon every such trial his own witnesses must testify in their own persons.

But, when the *trial is over* and the jury is discharged, &c., and then a motion is made for another trial upon the ground of after-discovered evidence, based upon *written affidavits*, why the prisoner should then have the *sacred privilege* of using such affidavits, and the State be forbidden to meet him with evidence of the same character ; is a query not answered by the practice in the courts, by any authorities referred to or any I can find, or by any reason of which I have been advised.

In *Grayson's case*, 6 Gratt. 723, it is laid down " that motions for new trials are governed by the *same rules in criminal* as in civil cases.

In civil cases, counter affidavits can not only be used, but by them the credibility of the witness of the opposite party can be impeached : Hill. on New Trials, 396; 3 Am. C. Law (Wharton), §3164.

It is therefore submitted that the court below did not err in overruling the motion made by the prisoner for a new trial. Attention is also called to the following authorities : *Rex* v. *Hastings*, 7 C. & P. Eng. C. L. R. 152; *Rex* v. *Wilks*, 7 C. & P. Eng. C. L. R. 272 ; *Rex.* v.

*Lany,* &c., 6 C. & P. Eng. C. L. R. 179; 3 Phil. Ev. 1504, &c.; 1 Bish. Cr. Prac. 1081.

JOHNSON, JUDGE, delivered the opinion of the Court:

The first question we will consider is that raised in the third bill of exceptions: Did the court err in overruling the motion for a continuance? Upon the face of the affidavit, we think the defendant showed himself entitled to a continuance. He stated in his affidavit that he had material witnesses, who resided in Marietta, Ohio; that their evidence would be material; that he had made efforts to get them; that without their evidence he could not safely go to trial; that he could not prove the same facts by any other witnesses, within his knowledge; that he had assurances that if he had until the next term of the court, he could procure their attendance. If this had been all the record disclosed in connection with said motion, upon reason and authority we would say that the court erred in overruling the motion for a continuance. But the record further shows, that upon the reading of said affidavit, the court interrogated the prisoner upon oath, at the bar of the court, as to the matters set forth in said affidavit; and that he stated that he had taken no steps to obtain the attendance of said witnesses residing in Marietta, Ohio; that said witnesses resided in said city, and that it was only twelve miles from the court house of Wood county; that he had a father and brother residing in Parkersburg, who were able to go for said witnesses, and secure their attendance, if it could be done; but that he had not asked them to go for him, or any one else, to see if the attendance of said witnesses could be procured; that he had not had subpœnas issued for said witnesses, nor had he any reason to suppose, that if the case was continued, said witnesses could be procured on the trial, except that his counsel had told him they could be procured. It is not necessary to consider whether the court should have certified what it did

in said bill of exceptions, as to the circumstance of the special grand jury being impaneled at the request of the prisoner, &c. The prisoner, by his own oath before the court, successfully contradicted almost every material allegation by him made in his affidavit; and, contrary thereto, showed that he had made no sort of effort to secure the attendance of the witnesses he desired, and had no reason, except what his counsel told him, that there was any probability that the attendance could have been secured, had the continuance been had.

In *Hewitt's Case*, 17 Gratt. 629, Judge Moncure says: "A motion for a continuance is addressed to the sound discretion of the court, under all the circumstances of the case; and though an appellate court will supervise the action of an inferior court in such a motion, it will not reverse a judgment on that ground, unless such action was *plainly* erroneous." See also, *Harman* v. *Howe*, 27 Gratt. 676; *Russell* v. *Commonwealth*, Court of Appeals of Va., 1 Va. Law Journal 434; *Davis & Moore* v. *Walker*, 7 W. Va. 447. In the case of *Hewitt* v. *The Commonwealth*, two days before the court commenced, the defendant made his affidavit as to the materiality, absence, &c., of witnesses, which, *prima facie*, showed that he ought to have had his case continued, and was absent when the case was called for trial, and his counsel made the motion for a continuance based on said affidavit; the court overruled the motion, and the trial was had in his absence, it being an indictment for assault and battery; the defendant, by his counsel, excepted to the ruling of the court; and in the bill of exceptions, the court gave as the reason for overruling the motion for a continuance: "Because the court was of opinion that the defendant was attempting to evade a trial, by absenting himself from court, so as to prevent a personal examination in open court on his motion for a continuance." When the proper affidavit has been made, as Judge Moncure in the case before cited says, "the party thus shows, *prima facie*, that he is not ready for trial, *though*

he has used due diligence to be so; and in the absence of anything to show the contrary, the court ought to give him credit for honesty of intention, and to continue the case, if there be reasonable ground to believe that the attendance of the witness at the next term of the court can be secured, especially if the case has not been before continued for the same cause. But circumstances may satisfy the court that the real purpose of the party, in moving for a continuance, is to delay or evade the trial, and not to prepare for it and in such a case, of course, the motion ought to be overruled." Under all the circumstances of this case, we cannot say that the ruling of the court, in continuing the case, was plainly erroneous.

The point presented in the first bill of exceptions is: Did the court err in refusing to give the following instructions?

" If the jury believe from the evidence that the house, alleged to have been broken and entered by the prisoner, was, at the time of the alleged commission of the offense, in the joint occupancy and possession of William P. Maddox and J. H. Spence; and did not belong to the said William P. Maddox alone, as charged in the indictment; and that the said Spence had one-half of the said house by virtue of an agreement to pay one-half the rent for the same. And if they further believe that there was only one door or entrance to said house, and that the same was the common entrance of said Maddox and said Spence to said house, then they must find the prisoner not guilty of the house breaking charged."

We think the law is properly propounded in the instruction, and if there is any evidence in the bill of exceptions set forth, that tends to disprove the material averment in the indictment, referred to in said instruction, to-wit: that the prisoner did " feloniously break and enter a certain out-house, called a barn, and used and occupied as a warehouse, *the property of one William P. Maddox*," &c., the instruction was improperly refused.

1877.
Special Term.

State
v.
Betsall.

If there is any evidence before the jury tending to prove a case supposed in an instruction asked for, and the instruction propounds the law correctly, it should be given. *Hopkins, Brother & Co.* v. *Richardson*, 9 Gratt. 485. In such a case, it is best and safest to give the instruction: *Early* v. *Garland, lessee*, 13 Gratt. 1. If it would be proper in a civil case to give the instruction under such circumstances, for stronger reasons it would in a criminal case.

Does the evidence tend to prove that the property in the barn at the time of the alleged house breaking, was not in W. P. Maddox, but in W. P. Maddox and J. H. Spence? The evidence is that " the prosecution proved that the barn, referred to in the indictment as having been broken open and entered, was on the 12th day of March 1877 in the joint use and occupation of W. P. Maddox and J. H. Spence. The said Maddox testifying (no one testifying to the contrary), that he rented the barn from one Woodruff, to whom he paid the rent for the same himself; and that he rented his meat shop to Spence, and hired to him the privilege of keeping his horse and feed in said stable, for which he paid him; that said Spence had a key to the door as well as himself, there being two keys to the lock; that said Spence was there at his pleasure, and that he could take the privilege from him at any moment; that the stable or barn was entirely under his control, and in the actual possession of him (said Maddox). And there was only one outer door or entrance to the said barn."

" If the rule," remarks Mr. East, " by which to ascertain the ownership, may be compressed with sufficient discrimation into a small compass, I should say generally, that where the legal title to the whole mansion remains in the same possession, there if he inhabit it, either by himself, his family or servants, or even by his guests, the indictment must lay the offense to be committed against his mansion. And so it is if he let out apartments to inmates who have a separate interest therein, if

92

they have the same outer door, or entrance into the mansion in common with himself. But if distinct families be in the exclusive occupation of the house and have their ordinary residence or domicile there, without any interference on the part of the proper owner, or if they be only in possession of parts of the house as inmates to the owner, and have a distinct and separate entrance, then the offense of breaking, &c., their separate apartments must be laid to be done against the mansion house of such occupiers respectively. Where it appeared that a servant lived in the house of his master at a yearly rent, it was ruled that the house could not be described as the master's house, though it be on the premises where the master's business is carried on, and although the servant has it because of his service:" 2 Am. Cr. Law §1577–8.

In this case there is no dispute that W. P. Maddox, as renter from Woodruff had the property in the barn at the time the offense was committed, unless the privilege granted to Spence disturbed that property, and made it the joint property of Maddox and Spence, instead of the separate property of Maddox alone. The evidence does not even tend to prove a joint ownership. The privilege granted to Spence, by Maddox, was not inconsistent with his ownership. A gentleman lives in a city, and near his mansion house he has a stable, and he hires to a man in the country, the privilege of putting his horse in the stable whenever he might come to the city, and the party thus holding the privilege carries a key to the stable, and some night the stable is broken open and the countryman's horse is stolen, would it be proper for the indictment to describe the stable as the joint property of the owner and the countryman? It would be just as reasonable in that case as in the one at bar.

Spence, had but a privilege to put his horse and feed in the stable or barn ; and that gave him no property therein ; and under the circumstances of the case, had the indictment described the barn as the property of

Maddox and Spence, there would have been a fatal variance between the allegation and the proof, and the prisoner would have been entitled to his acquittal of the charge. We think the court properly refused the instruction.

The *fourth* bill of exceptions presents the question: Whether the court erred in overruling the prisoner's motion for a new trial, based on the ground of after-discovered evidence? In support of the motion, the prisoner's own affidavit, and that of Rosa Wires and Rachel Davis's were filed. The attorney for the State filed five counter-affidavits. Two of the affidavits for the State were to weaken or destroy the effect of Rachel Davis's affidavit, which states that J. M. Baker, a policeman, had tried to induce her to stay away from court.

Several affidavits of the State were filed for the purpose of showing that the witness, Rosa Wires, relied on by the prisoner, in his motion for a new trial, was a woman of bad reputation, and was kept by the prisoner as his mistress.

If the prisoner's affidavit did not itself, accompanied by that of his new witness, show that he was legally entitled to a new trial, it was properly refused.

In *Read's Case*, 22 Gratt. 925, it is held: "To authorize the granting of a new trial, on the ground of after-discovered evidence, four things are necessary: First—The evidence must have been discovered since the former trial. Second—It must be such as reasonable diligence on the part of the party asking it could not have secured at the former trial. Third—It must be material in its object, and not merely cumulative or corroborative, or collateral. Fourth—It must be such as ought to produce, on another trial, an opposite result on the merits." The affidavit of the prisoner states that he was surprised by the testimony of John Haley, a witness for the State, "who testified about a pretended conversation with affiant before the court house concerning the party Charles Woods, an alleged accomplice; and that said conversa-

tion took place on the 13th day of March 1877. Affiant says that he had no such conversation with John Haley, on the —— day of March 1877; that he was not able to leave his room on that day;" but he now here even denies that he had that conversation at some other time and place. The time and place is not material, except so far as it might go to impeach the credit of the witness. The testimony is not of that character as would likely lead to a different result, if it was produced on a new trial. There is another fatal objection to it: if it was produced, its only effect could be to impeach the credit of the witness, Haley, before the jury; and the general rule is, that a new trial will not be granted where the object is to discredit a witness on the other side: *Thompson's Case*, 8 Gratt. 637; *Reade's Case*, 22 Gratt. 946; *Gillilan* v. *Ludington*, 6 W. Va. 145. That seems to be the sole object of this after-discovered evidence. If new trials were granted for such purposes, litigation would never cease. We do not think this is a proper case in which an exception should be made to the general rule. The court therefore did not err in overruling the motion for a new trial, based upon the ground of after-discovered evidence. Having decided that the affidavit of the prisoner was wholly insufficient to show he was entitled to a new trial, the question: whether the court erred in reading the *ex parte* affidavits, impeaching the character for chastity of the newly-discovered witness, in opposition to the prisoner's motion for a new trial, does not fairly arise in the record, and cannot properly be considered in this case.

The *second* bill of exceptions raises the question: Did the court err in overruling the prisoner's motion for a new trial, based on the ground that the verdict was contrary to the law and the evidence?

This bill of exceptions sets out all the facts proven on the trial; and it is claimed by the prisoner's counsel, that the verdict of the jury is based on the uncorroborated testimony of Charles Woods, an alleged accomplice in

the commission of the crime charged in the indictment, which is insufficient to sustain it.    If the only material testimony before the jury was the uncorroborated testimony, of the alleged accomplice, Woods, is that sufficient, under the law, to justify the verdict?    There seems to be no doubt expressed in any of the cases, that the evidence of an accomplice is competent.    Hale informs us that at Newgate, 15 Charles 2, Henry Frew was indicted of burglary, and by advice of Keeling Chief Justice, Brown Justice, and Wilde Recorder, one Perrin, who was in jail for two robberies, and confessed himself to be in this burglary, was sworn as a witness against Frew.    In 1662, Tonge, Phillips and others were indicted for treason, and upon conference with all the judges, it was *inter alia* resolved that a party to the treason, who confessed it, may be one of the witnesses in case of treason : for the statute intended two such witnesses, that were *allowable witnesses at common law*; and so a *particeps criminis* may be admitted as a witness; but the jury may, as in other cases, consider of the evidence and credit of the witnesses.

In 1672 *Mary Price* was convicted of treason, and *Hyde* of highway robbery, on the evidence of accomplices, 1 Hale's P. C. 303.    See also *Hawkins*, B. 2 chapter 46, §18, who says that, " it has long been settled that it is no exception against a witness, that he hath confessed himself guilty of the same crime, if he has not been indicted for it ; for if no accomplices were to be admitted as witnesses, it would be generally impossible to find evidence to convict the greatest offenders.    Also it hath been often ruled that accomplices, *who are indicted,* are good witnesses for the King, until they be convicted."    In the case of *Atwood* and *Robbins,* indicted for robbery, 1 Leach. 464, Judge Buller referred to the twelve Judges the question: whether the evidence of an accomplice, unconfirmed by any other evidence that could materially affect the case, was sufficient to warrant a conviction.    They were unanimously of opinion, that an ac-

complice alone is a competent witness. The same point was also resolved in *Durhom* and *Crowder's case*, charged with burglary, 1 Leach. 478. In *Jones's case*, in 1809, Lord Ellenborough said, that within a few years a case was referred to the twelve Judges, where four men were convicted of a burglary, on the evidence of an accomplice, who received no confirmation concerning any of the facts which proved the criminality of one of the prisoners; but the Judges were unanimously of opinion that the conviction as to all the four was legal; and on that opinion they all suffered the sentence of the law, 1 Leach. 466, note (*a*); 2 Camp. 132. See *Byrd* v. *The Commonwealth*, 2 Va. Cases, where these authorities are collected.

In *Rex* v. *Addis*, 6 C. & P. 388, Patterson, Judge, said: "The corroboration of an accomplice ought to be as to some fact, or facts, the truth or falsehood of which, go to prove or disprove the offense charged against the prisoner." In *Rex* v. *Webb et al.* 6 C. & P. 595, Williams, Judge said: "Proving by other witnesses, that the robbery was committed in the way described by the accomplice, is not such confirmation of him as will entitle his evidence to credit so as to affect other persons. Indeed, I think, it is really no confirmation at all, as every one will give credit to a man who avows himself a principal felon, for at least knowing how the felony was committed. It has been always my opinion that confirmation of this kind is of no use whatever." In *Rex* v. *Hastings & Graves*, 7 C. & P. 152, Lord Denman, C. J., said: "I considered, and I believe my learned brothers agree with me, that it is altogether for the jury, and they may, if they please, act upon the evidence of the accomplice without any confirmation of his statement. But one would not, of course, be induced to give any great degree of credit to a person so situated."

In *Rex* v. *Wilkes & Edwards*, 7 C. & P. 272, Alderson B., in charging the jury said: "The confirmation of the accomplice as to the commission of the felony, is really

no confirmation at all, because it would be a confirmation as much, if the accusation were against you and me, as it would be as to the prisoners who are now on trial. The confirmation, which I always advise juries to require, is the confirmation of the accomplice in some fact, which goes to fix the guilt on the particular person who is charged. You may legally convict on the evidence of an accomplice only, if you can safely rely on the testimony; but I advise juries never to act on the evidence of an accomplice, unless he is confirmed as to the particular person, who is charged with the offense."

In *Regina* v. *Farber*, 8 C. & P. 106, Lord Abinger C. B. said in summing up : "I am strongly inclined to think that you will not consider the corroboration in this case sufficient; no one can hear the case without entertaining a suspicion of the prisoner's guilt; but the rules. of law must be applied to all men alike. It is a practice that deserves all the reverence of law, that Judges have uniformly told juries, they ought not to pay any respect to the testimony of an accomplice, unless the accomplice is corroborated in some material circumstance. Now in my opinion, that corroboration ought to consist in some circumstance that affects the identity of the party accused. A man who has been guilty of a crime himself, will always be able to relate the facts of the case; and if the corroboration be only on the truth of that history without identifying the persons, that is really no corroboration at all."

In *Regina* v. *Stubbs*, 33 Eng. L. & Eq. 551, decided in 1855, there had been a conviction of the defendant on the evidence of accomplices, at the quarter sessions of the county of Durham, under the direction of the chairman : "that it was not necessary that the accomplice should be confirmed as to each individual prisoner being connected with the crime charged, that their being corroborated as to material facts, tending to show that two of the other prisoners were connected with the larceny, was sufficient as to the whole case; but that the jury

1877.
Special Term.

State
v.
Betsall.

should look with more suspicion at the evidence in Stubbs's case, where there was no corroboration, than to the cases of the others, where there was corroboration; but that it was a question for the jury." The jury found all the prisoners guilty. The question for the opinion of the court was: whether the direction of the chairman was right. Jervis, Chief Justice, said : "We cannot interfere, though we may regret the result that has been arrived at; for it is contrary to the ordinary practice. It is not a rule of law that accomplices must be confirmed, in order to render a conviction valid; and it is the duty of the judge to tell the jury, that they may act on the unconfirmed testimony of an accomplice; but it is usual in practice, for the judge to advise the jury not to convict on such testimony alone ; and juries generally attend to the judge's direction and require confirmation. But it is only a rule of practice.

There is another point to be noticed: Where an accomplice speaks to the guilt of three prisoners, and his testimony is confirmed as to two of them only, it is proper, I think, for the judge to advise the jury, that it is not safe to act on his testimony as to the third prisoner, in respect of whom he is not confirmed ; for the accomplice may speak truly as to all the facts of the case, and at the same time in his evidence, substitute the third prisoner for himself, in his narrative of the transaction. In this case, the jury have acted on the evidence, and we cannot interfere." Willes, Judge, said : "This is not a question of law, but of practice ; and questions of law can only be reserved for our opinion." The conviction was affirmed. It will be both interesting and profitable to see how the courts of last resort, in a number of our states, have viewed the question now under consideration. In Commonwealth v. Bosworth, 22 Pick., Morton, Judge, in delivering the opinion of the court, said : "It is competent for a jury to convict on the testimony of an accomplice alone. The principle, which allows the evidence to go to the jury, necessarily involves in it a

power in them to believe it.   The defendant has a right to have the jury decide upon the evidence which may be offered against him, and their duty will require of them to return a verdict of guilty or not guilty, according to the conviction which that evidence shall produce in their minds.   But the source of this evidence is so corrupt, that it is always looked upon with suspicion and jealousy, and is deemed unsafe to rely upon without confirmation.   Hence the court ever consider it their duty to advise a jury to acquit, where there is no evidence other than the uncorroborated testimony of an accomplice."

The same position was taken in *Commonwealth* v. *Price*, 10 Gray 472.

In *The State* v. *Walcott*, 21 Conn. 272, Church, C. J. said : " The testimony of an accomplice is admissible, and of course to some extent is presumed to be credible. The law would not admit proof which it had decided, *a priori* should not be believed when admitted.   If credible at all, it may be sufficiently so to produce belief and conviction ; and this is not unfrequently true in fact. The degree of credit, which is due to an accomplice, is a matter exclusively for the jury to say.   Courts frequently do, and ought to advise caution, in reposing confidence in the naked testimony of an accomplice; but this is rather in the exercise of a proper judicial discretion, than because the law demands it." *State* v. *Stebbins*, 29 Conn. 463.   In *The People* v. *Costello*, 1 Denio. 83, the court held, that " although it has often been said by Judges and elementary writers, that no person should be convicted on the testimony of an accomplice, unless corroborated by other evidence, still there is no such inflexible rule of law.   It is a question for the jury, who are to pass upon the credibility of an accomplice, as they must upon that of every other witness.   His statements are to be received with great caution, and the courts should always so advise ; but after all if his testimony carries conviction to the mind of the jury and they are fully

93

convinced of its truth, they should give the same effect to such testimony, as should be allowed to that of an unimpeached witness, who is in no respect implicated in the offense." *The People* v. *Davis,* 21 Wend. 309.

In *Upton* v. *The State of Iowa,* Stockton, Judge, referring to the testimony of an accomplice said: "His testimony is that of an accomplice and must be corroborated by evidence tending to connect the defendant with the commission of the offense," and held there was no such corroboration, and the judgment was reversed and a new trial granted. In the case of *The State of Iowa* v. *Schlagel,* 19 Iowa 169, Cole, Judge, said: "The rule is that if the jury are satisfied, that he (the accomplice) speaks the truth in some material part of his testimony, in which they see him confirmed by unimpeached evidence, this may be ground for their believing, that he also speaks truth as to other parts, as to which there may be no confirmation." He then says: "Our statute (Rev. Stat. §4102) requires corroboration of an accomplice connecting the defendant with the commission of the offense; but in this case no question is made on that point." It is presumed the same statute was in force, when the case of *Upton* v. *Iowa,* above cited, was decided. In *Dawley* v. *The State,* 4 Ind. 128, it was held, that a jury may convict upon the testimony alone of an accomplice." In *Stocking* v. *The State,* 7 Ind. 326, it was held, " that the evidence of an accomplice should be carefully scrutinized by the court and jury; yet the jury may convict upon such evidence, even though it be unsupported by any corroborating testimony."

In the case of *The State* v. *John Haney,* 2 Dev. & Bat. 390, Gaston Judge, delivering the opinion of the court said : " This court understands the rule of law to be, that unsupported testimony of an accomplice, if it produce undoubting belief of the prisoner's guilt, is sufficient to warrant a verdict affirming his guilt; such is certainly the law of the country, from which we have derived the principles of our jurisprudence."

In the case of *The State* v. *John C. Hardin*, 2 Dev. & Bat. 407, Ruffin, C. J. said : " The evidence of an accomplice is undoubtedly competent, and may be acted on by the jury as a warrant to convict, although entirely unsupported. It is however, dangerous to act exclusively on such evidence, and therefore the court may properly caution the jury, and point out the grounds for requiring evidence confirmatory of some substantial part of it ; but the court can do nothing more, and if the jury really yield faith to it, it is not only legal, but obligatory upon their consciences to found their verdict upon it."

In *State* v. *Watson*, 31 Mo. 361, Napton Judge, in delivering the opinion of the court said : " There seems to be some inconsistency in the rules laid down by text-writers in relation to the testimony of accomplices. It is conceded with great uniformity, that a conviction based upon the uncorroborated testimony of an accomplice is legal; as he is a competent witness, it follows as a consequence that his testimony, if credited, will authorize a jury to convict, although unsupported by another witness. But it is the practice in England and probably in this country, where Judges are still entrusted with the duty of charging the jury on the facts as well as the law of the case, to advise juries to acquit when the prosecution rests on the sole and uncorroborated testimony of the accomplice."

In the case of *The United States* v̇. *Troax*, 3 McLean 224, McLean, Judge, instructed the jury : "that an accomplice is a competent witness; and that the jury must judge of his credibility. Such a witness always comes before the court and jury under the most unfavorable circumstances. By his own admission he participated in the offense, which he charges, and is called to establish against the defendant. And this charge is made by him generally, if not always, under a hope that by making it, he may escape punishment. Such a motive is supposed to influence the witness so strongly, as to take from his

statements the credit, which they might otherwise be entitled to. And in addition to this, the fact of having committed the same offense goes to impeach his credibility. From these consideration a conviction is rarely founded alone upon the testimony of an accomplice."

In *Allen* v. *The State*, 10 Ohio St. 287, the supreme court of Ohio held: "The degree of credit, which ought to be given to the testimony of an accomplice, is a matter exclusively for the consideration of the jury. In most cases it is highly important that the jury should require his testimony to be corroborated by other evidence or circumstances, rather than to convict upon his unsupported testimony. Indeed, it can very rarely be expected that the testimony of an accomplice, admitting his own depravity and turpitude in the matter, would be sufficient to overcome all reasonable doubts and presumptions in favor of the accused. But it is said, there is no rule of law requiring of the jury a refusal to convict upon the uncorroborated testimony of an accomplice."

All the authorities we have cited agree upon two prepositions as settled law:

1. That the testimony of an accomplice is competent.

2. That, after the court has cautioned the jury as to such testimony where it is uncorroborated,·and the jury convicts upon it, such conviction is legal, It seems that in all, or nearly all the cases cited, according to the law and practice governing the courts rendering the decisions, that the Judges were authorized in a criminal case, to charge the jury upon the facts as well as the law of the case. Such is not the law, or practice, either in Virginia or in our own State. In Virginia and in this State, the juries are judges of the law as well as the fact in a criminal case; and while the court may charge the jury as to the law of the case, yet the court is not permitted to charge the jury as to the *weight* of the evidence in any case. Our courts are somewhat peculiar in this respect; but the law has been

so held in Virginia from the earliest history of her jurisprudence; and we think it constitutes one of the brightest ornaments thereof. In a criminal case, the accused has the right to a trial by his peers, untrammeled, by any interference by the court as to the facts of his case. The jury are supposed to know him, they are his neighbors and acquaintances, and they are not apt to improperly convict him, on testimony not worthy of belief. While it might benefit him for the court, to instruct the jury, where a conviction was sought on the uncorroborated evidence of an accomplice, that it was not safe to convict on such testimony without confirmation; yet if the Judge could interfere in one case, he could in another; and it is much safer for the citizen, that the court is not permitted to make any comment on the weight of the evidence in any case. It is error for a court in the trial of a criminal case to make a remark to, or in the presence of the jury, in reference to matters of fact, which might in any degree influence them in their verdict: *State* v. *Hurst, infra.*

It might be that the uncorroborated testimony of the accomplice would be entirely convincing to a jury. He might be young, seduced from the paths of rectitude by one much older, and might detail the simple truth of the whole case in such a manner as would carry conviction to the mind of every juror, so that he could not say he had any doubt of the guilt of the accused. While the court in our State, by long settled practice in criminal cases, is not permitted to instruct the jury on the weight or effect of the evidence, there is the largest latitude given to counsel, in reading the law to the jury, and commenting on the weight of the testimony; and a jury is not apt to believe the uncorroborated testimony of an accomplice, under such circumstances, stained as he is by crime, according to his own admission, unless there is something in his manner of testifying, or other circumstances surrounding the transaction, which, while they might not under the law amount to confirmation, would

convince the jury that the witness was telling the truth.

We have a Virginia case, much like the one here, *Brown's Case*, 2 Leigh 769. The question in that case was presented in much the same manner as it is here. The statement of the case shows that: "The prisoner moved the court to set aside the verdict and order a new trial, on the ground that the evidence did not warrant the finding. This motion was overruled. But the judge made a statement of the facts as they appeared in evidence at the trial, and ordered it to be made part of the record; from which it appeared that the Commonwealth introduced a witness named Ross, whose evidence fully warranted the conviction, if he was to be believed; but on cross-examination of this witness it appeared, that he had been apprehended with the prisoner, and jointly charged with him, before the examining magistrate, with the felony of which the prisoner was now indicted; but after some examination by the magistrate, he was discharged, and sworn as a witness against the prisoner; and on that examination he denied most, perhaps all, the material facts, to which he now testified. The witness was a young man between eighteen and twenty years of age; and he gave as a reason for this variance in his testimony, that the prisoner had informed him, that if he was examined, he would not be bound to disclose any knowledge he possessed, as in doing so he would implicate himself.

It was also disclosed by the witness, in the course of his cross-examination, that he was to receive part of the profits of the counterfeit notes, which he (and he only) proved to have been given by the prisoner to the negro, *Milus*, to be passed to *E. Perryman*. The manner of the witness during his examination was frequently hesitating; and in some instances, as to collateral facts implicating himself, he prevaricated; but in his narrative of the main facts, which went to establish the prisoner's guilt, he was unembarrassed and consistent. The other evidence, if Ross's testimony was disregarded, was clear-

ly insufficient to warrant the conviction of the prisoner; and the motion for the new trial was made on the ground that Ross was an incompetent witness, or if competent, unworthy of credit. The court passed sentence upon the prisoner according to the verdict." In the appellate court: "it was insisted that the new trial ought to have been granted, since it appeared that the verdict of conviction was founded on the testimony of a witness, who was not only an accomplice, but by his own account, had committed perjury in an earlier stage of this very prosecution." Judge Brockenbrough, in delivering the opinion of the court, said: "The question presented to us is: whether a new trial ought to have been granted to the prisoner on account of the incompetency, or want of credibility, of the principal witness, whose evidence mainly produced the conviction. In *Byrd's Case*, 2 Va. Cases 490, this court gave a very decided opinion on the competency of an accomplice as a witness, at any time before his conviction. The question of his credibility may surely be left to the determination of the jury, under the superintendence of the judge who tries the cause. The credit of this witness has been affirmed by the jury, and sanctioned by the judge, who heard and saw him. This court, sitting as an appellate court, and knowing nothing of the evidence, or of the witness, except as it appears on the paper, feels itself very incompetent to decide on the credibility of the testimony; unless it was irresistibly clear that the conviction was wrong, this court would not disturb it. We are unanimously of opinion that no new trial should be granted in this case, on that ground."

Where a jury has found the defendant guilty in a criminal case; and a motion is made to set aside the verdict, and grant a new trial, on the ground that the evidence is insufficient to sustain the verdict, the appellate court will not set aside the verdict and grant a new trial, unless it is irrisistibly clear that the conviction was wrong. The liberty of the citizen is sufficiently pro-

tected, when a jury finds the defendant guilty upon the evidence under the superintendence of the court, and the Judge, who presides at the trial, is satisfied with the verdict, and the record does not show that the verdict was plainly unwarranted by the evidence. In the case under consideration it does not appear, that any improper evidence was admitted, or that proper evidence was excluded. The accomplice was sworn as a witness and gave his statement to the jury in hearing and under the superintendence of the court; the jury believed his statement, and found the prisoner guilty of the crime charged; and the Judge, who sits for the protection of the citizens, as well as the interests of the State, was satisfied with the verdict, and refused to set it aside. By this he said he regarded the evidence sufficient to sustain the verdict; and we cannot say that it was not. If the jury believed it, by all the authorities it was sufficient to sustain their verdict; and they certainly did believe it. We have not thought it necessary to inquire, whether or not the evidence of the accomplice was corroborated in any material matters. We take the position that, without any corroboration whatever, the evidence of an accomplice is sufficient to convict, if it convince the jury beyond a reasonable doubt of the guilt of the accused. It is suspicious evidence, it is true, and comes from a bad source, but if it is so detailed to a jury, as to convince them of the guilt of the prisoner, and they find him guilty, and the court is satisfied with the verdict, the Appellate Court will not, because it was not corroborated, set the verdict aside and grant a new trial.

For the foregoing reasons I am of opinion, there is no error in the judgment of the circuit court of Wood county, rendered in this case; and the same is affirmed.

Judges HAYMOND, GREEN and MOORE concurred.

JUDGMENT AFFIRMED.