## CARL THOMAS v. STATE.

No. A-4163.   Opinion Filed Dec. 26, 1923.
(220 Pac. 976.)

(Syllabus.)

1. **Evidence—Searches and Seizures—Officer not Protected in Making Unauthorized Search and Seizure by Search Warrant Subsequently Issued—Evidence so Obtained in Liquor Case Inadmissible.** Where an unauthorized search and seizure is commenced and in progress, the issuance of a search warrant for the purpose of making valid that which at its inception was illegal will afford no protection to the officer making such search and seizure.

   (a) Evidence so obtained should be excluded on the timely objection to its introduction.

2. **Searches and Seizures—Officer Executing Search Warrant not Authorized to Amend it by Interlineation.** Where a valid search is in progress and it appears to the officers executing the same that nothing can be found at the place named in the search warrant, the officer executing the warrant had no right to amend it by interlineation, or otherwise, so as to include other adjacent premises.

3.    **Evidence—Extrajudicial Confession to be Corroborated.** A mere naked extrajudicial confession should be corroborated by other competent proof.

Appeal from County Court, Pittsburg County; S. F. Brown, Judge.

Carl Thomas was convicted of illegal possession of whisky, and he appeals. Reversed and remanded.

Monk & McSherry, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. The specific offense charged followed by a conviction thereof, was that the plaintiff in error, here designated the defendant, had in his possession or under his control, on the 11th day of October, 1921, 100 gallons of whisky, with the intent of violating the prohibitory liquor laws of this state.

The proof shows that on the day preceding, October 10, 1921, defendant was arrested under circumstances indicating that he was making a sale of a small quantity of whisky to some young men near the defendant's premises. While one officer took the defendant to jail, the other officer went into the home of the defendant, where he saw the wife of the defendant empty some whisky into the toilet stool. The officer then seized a quart and a pint bottle in the bathroom, and went out into the dining room and waited there until another officer came with a search warrant. Under authority of this search warrant further search was made in which no other liquor was discovered. On the evening of the 10th another search warrant was issued, directing the officer to search the the dwelling house of A. A. Banks for liquor supposed to belong to the defendant. On October 11th, armed with this latter search warrant, the United States commissioner,

accompanied by several peace officers, went to the Banks home, where they entered and made at least a partial search, finding nothing. Then and there this United States commissioner amended the search warrant by interlineation with a pencil, inserting these words, "outhouses, shop in back yard, vacant fields, vacant houses and property adjacent, including cellars and all places on the premises where liquor could be stored." The search of these premises then proceeded, resulting in the finding of about 100 gallons of whisky in casks hidden in a barn loft and covered with hay.

These premises belonged to Banks, but there was some evidence that the defendant was frequently seen in that vicinity. Later, while in the custody of the officers, the defendant made an extrajudicial confession to the effect that the whisky found in the Banks barn belonged to the defendant and that defendant would assume all responsibility therefor; that defendant did not want Banks prosecuted. There was some evidence tending to show that the officers told defendant while he was in their custody that Banks might not be prosecuted if defendant would assume all responsibility himself, and that this may have influenced the defendant to make the confession. There is some testimony of circumstances indicating that Banks and defendant were partners and equally responsible.

The defendant here urges: First, that the seizures made at defendant's residence on October 10th and at the Banks barn on October 11th were illegal, and that the evidence so procured illegally was inadmissible; second, that the extrajudicial confession, if such it was, was not corroborated by any competent evidence.

The purposes of a search warrant are to preserve the home, premises, and private belongings from unreasonable

invasion and abuses. If the rule recently announced by this court in the case of Gore v. State, 24 Okla. Cr. 394, 218 Pac. 545, and other cases since decided involving like circumstances, were to be so extended as to permit the issuance and execution of search warrants during the course of an unauthorized search and seizure and thus make valid that which at its inception was invalid, it would in many cases amount to a destruction of the rule itself. A search warrant executed or amended to meet the emergencies of a search and seizure then in progress, without sufficient authority, is as a sounding brass or a tinkling cymbal, a clear  evasion of the purpose of the constitutional safeguards for which it was created.

Whether or not our deductions are correct, that neither one of the search warrants gave legal authority to the peace officers to execute them, the facts supporting their legality, or that of either one of them, if not a question of law, were at least a question for the jury, and it was error for the court to refuse the defendant's proffered instruction directing the jury to give heed to no evidence procured by an unauthorized search if then found as a fact that one or the other, or both, of the search warrants were illegally executed.

We think there is some merit to the second objection urged by counsel for defendant. Outside the evidence illegally obtained, if it was so obtained, by the extrajudicial confession, there is no probative proof that the liquor found in Banks' barn belonged to the defendant, or that he had it for illegal purposes. Brown v. State, 20 Okla. Cr. 396, 196 Pac. 967; Henry v. State, 14 Okla. Cr. 189, 169 Pac. 658; Berry v. State, 4 Okla. Cr. 202, 111 Pac. 676, 31 L. R. A. (N. S.) 849; 1 R. C. L. 586.

Considering the evidence illegally obtained, we suspect that defendant was an illicit whisky dealer on a large scale,

and that Banks was his partner, or was implicated with him. We would affirm this case if we could do so without violence to basic principles of law, but to place our stamp of approval on the practice here criticized would have a tendency to invite more flagrant violations of correct .practice and encourage abuses that might adversely affect the constitutional rights of innocent persons.

The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

MATSON, P. J., and DOYLE, J., concur.