# Staunton

## CLARENCE GUTHRIE V. COMMONWEALTH OF VIRGINIA.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*Lowry & Burks* and *William W. Berry, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

Clarence Guthrie was convicted of an unlawful sale of whiskey, and sentenced to jail for a term of six months and fined $50.

The only evidence for the Commonwealth consists of the testimony of one witness, W. E. Dalton, who testified that he had been employed as an inspector by the Alcoholic Beverage Control Board since January 1, 1937; that on February 19, 1937, while driving from Montvale to the town of Bedford, he "picked up" a Negro boy who informed him that whiskey could be purchased in Bedford. On arrival in the town, the boy directed and went with the witness to the home of the accused, where the witness purchased from the accused a pint, and two drinks served in glasses. He paid fifty cents for the pint, and ten cents each for the drinks. At the home of the accused he saw two white men on the porch, talking and drinking. When he left, they were still there. The witness took the pint bottle to Amherst and labeled it for the purpose of using it as evidence against the accused. No adequate description was given of the Negro boy or the two white men.

The evidence for the accused, and the corroborating circumstances as detailed by his witnesses, if believed by the jury, would have fully supported a verdict of acquittal.

.The only error assigned is the refusal of the trial court to give, as requested by the accused, the following instruction:

"The court instructs the jury that where there is an illegal sale of intoxicating liquors the purchaser is an accomplice of the seller; and the court further tells the jury while they may find a verdict upon the unsupported testimony of an accomplice, such evidence is to be received with great caution, and the court in this case warns the jury of the danger of basing a verdict on the unsupported testimony of an accomplice."

Under the Layman Act, which did not, in express terms, make the purchase of intoxicating liquors a crime, this court held that the purchaser of liquor sold illegally was an accomplice of the seller. *Crosby* v. *Commonwealth,* 132 Va. 518, 110 S. E. 270; *Faulkner* v. *South Boston,* 139 Va. 569, 132 S. E. 358. However, in each of these cases, it was held that the refusal of the trial court to give a similar instruction was not error, because the records showed that the testimony of the purchaser was corroborated. Under the provisions of section 49 of the Alcoholic Beverage Control Act, Code 1936, section 4675(49), the purchaser of alcoholic beverages from anyone other than a party duly licensed to sell is guilty of a misdemeanor.

The vital question presented is whether an officer, who, for the purpose of obtaining evidence, buys intoxicating beverages from a person not authorized to sell, is an accomplice in the sense that it is the duty of the trial court to instruct the jury to act upon his uncorroborated testimony with caution.

The present rule applicable to the testimony of an accomplice originated in the ancient doctrine of "approvement"; that is, where a person indicted for treason or any other felony confessed the fact before pleading, and, for the purpose of obtaining his own freedom, made accusation against others, his accomplices in the commission of the crime. If the persons implicated were convicted, the "approver" received his pardon; if they were acquitted, the

"approver" was hanged. IV Blackstone Com. 330, 331; *Whiskey Cases,* 99 U. S. 594, 599, 25 L. Ed. 399. Later, the English decisions dealt with the admissibility of the testimony of accomplices and not with the question of its weight.

Out of the rule of complete immunity arose the dangerous possibility that an accomplice would falsely accuse others in order to avoid his own penalty. The credibility of such testimony was the subject of comment by the judge in the exercise of his common law function of advising the jury on the weight of all the evidence. This well-established rule of practice has become virtually the equivalent of a rule of law by which judges warn juries that it is dangerous to convict a person on such evidence when it is uncorroborated. Halsbury's Laws of England (2d Ed.), Vol. 9, p. 222.

In many states the question is now controlled by statute. There is no such statute in Virginia, but the rule of practice is well settled, and is stated by Judge Whittle in *Jones' Case (Jones* v. *Commonwealth),* 111 Va. 862, 69 S. E. 953, 955, as follows: "While the rule of decision in this jurisdiction is that the jury, as triers of fact, may, if they see proper to do so, convict upon the uncorroborated testimony of an accomplice alone, nevertheless, the principle is well settled that the evidence of an accomplice must be received and acted upon by the jury with great caution. The source of such evidence is tainted, and the danger of collusion between accomplices and the temptation to exculpate themselves by fixing responsibility upon others is so strong, that it is the duty of the court to warn the jury against the danger of convicting upon their uncorroborated testimony."

In a strict sense, there are no accomplices in petty crimes such as misdemeanors, "because the law, which *de minimis non curat,* or does not care about little things, will not descend to distinguish the different shades of guilt in petty offenses." Davis, Criminal Law, p. 39. The same caution, however, is applied to the testimony of a joint principal.

■■ "The historical and common-sense reason for the rule requiring corroboration of accomplices, therefore, is that the witness could otherwise transfer responsibility for a crime from his own shoulders to another's. However, if the witness had no intent to commit the crime, so that no criminal guilt could attach to him under any conditions, the motive for giving false testimony on his part would never arise. His exoneration would be based upon his innocence, as shown by the facts, rather than upon immunity derived from the testimony he might give. Consequently, if the police officer has no motive in trying to shift the burden from himself to the defendant, the principle of corroboration would not be applicable." *People* v. *Swift*, 161 Misc. 851, 293 N. Y. S. 378, 381.

■■ The general rule, deducible from the many authorities cited in the briefs, is that officers of the law are not permitted to generate in the mind of a person, who is entirely innocent of any criminal purpose, the original intent to commit criminal acts which that person would not have committed or contemplated, except for such inducements, and that convictions based upon such conduct will not be sustained. This salutary rule is not involved in this case. The evidence of the officer is admissible and, if believed by the jury, is sufficient to convict. The question is whether the jury may consider it uninfluenced by condemnation from the bench.

The solution of the problem in its final analysis is one of policy. Usually, in the trial of such cases, corroborating facts and circumstances are introduced, and they should be when possible. We hesitate to condemn as unworthy of belief the testimony of a regular employee of the Commonwealth who, without persuasion or enticement, extended to the accused an opportunity to make an illegal sale from a stock of whiskey stored on the premises. The same danger of collusion between the officer and the criminal does not exist. The temptation of the officer to exculpate himself by fixing responsibility upon others is absent. When it thus appears that the reason and necessity for the rule do not

exist, it should not be reversible error for the trial court to refuse to apply the rule itself.

The situation presented by the Commonwealth is that the illegal sale of intoxicating beverages is so prevalent that it has become necessary to employ detectives, or, as they are sometimes called, undercover men, who must conceal their official status in order to obtain evidence against persons engaged in this illegal traffic. The Commonwealth's witness was employed for this particular purpose. He was evidently not well known in the town of Bedford. At least, he was not known to the defendant as an employee of the Commonwealth.

The further inference from the Commonwealth's evidence is that it was so well known among a certain element of the people in that locality that the accused was engaged in the illegal traffic of intoxicating liquors that the Commonwealth's witness, a stranger, upon casual inquiry of a Negro boy, was directed to the accused's home as a place where illegal sales of intoxicating liquors were habitually made. On the arrival of the Commonwealth's witness at the accused's home, he found two other men, drinking, and the accused equipped to sell liquor in pint bottles or by the drink, and he actually made both types of sale to the Commonwealth's witness.

"Detectives, whose office is limited to that of observing a crime when in the process of concoction, or of exploring its causes when consummated, and who have not instigated it or encouraged it, except so far as is necessary, in order to be able to report its character, are public agents entitled, when acting *bona fide* and discreetly, to confidence and support. It is true that allowance is to be made for that zeal which leads officers of this class sometimes to attach undue importance to supposed signs of crime. It is important, also, that their testimony should, as far as possible, be corroborated. * * *

"Where a criminal scheme is in operation (as where a number of libelous or indecent documents are printed for transmission by mail), a party who calls for one of these

is no more a participant in the crime of publication than is a party who buys a newspaper at a counter participant in the crime of publication.

"The same remark applies to the obtaining, by solicitation, of single articles, whose sale is prohibited by law, from a stock in the vendor's hands, as where a small quantity of drink is bought from a stock behind the counter, or where counterfeit money is obtained from one who has such money on hand, or where persons engaged in systems of revenue fraud are enticed to expose themselves in a way that leads to detection. In this line of cases it is not the crime that is instigated by the government. The crime has been already concocted,—the prohibited books printed, the prohibited coin manufactured, the prohibited goods arrayed for importation. All that the government (or the prosecution, as the case may be) invites, is the exposure of that which already exists in overt shape. If the government, for instance, should say 'Import these goods, or write this libelous letter,' there could be no prosecution." 1 Wharton, Criminal Law (12th Ed.), pp. 243-4.

It is useless to review the many cases cited by the accused. Those in point, with one exception, support the text-writers quoted. Others hold that when a detective, for the purpose of obtaining evidence to be used in prosecution, apparently encourages those engaged in planning the commission of felonies, he lacks the specific intent which is an essential element of the completed crime under review. Other cases hold that when a statute expressly declares the sale of certain articles to be illegal but does not make the purchase of the article an illegal act, the officer purchasing the same is guilty of no crime and hence is not an accomplice.

■ Of course, there can be no seller of any article without a purchaser. In the first two Virginia cases cited, without the express mandate of a statute we held that purchasers of liquor illegally sold were accomplices of the seller. But in neither of those cases was the purchaser an officer of the Commonwealth employed to detect violations

of law. The general test to determine whether or not a witness is an accomplice is to determine whether he could be indicted for the same offense. *White* v. *Commonwealth,* 5 Ky. Law Rep. 318; *Bass* v. *State,* 37 Ala. 469; *People* v. *Bright,* 203 N. Y. 73, 96 N. E. 362, Ann. Cas. 1913A, 771; *Hendrix* v. *State of Oklahoma,* 8 Okl. Cr. 530, 129 P. 78, 43 L. R. A., N. S., 546; *Grimm* v. *U. S.,* 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550; *State* v. *Gibbs,* 109 Minn. 247, 123 N. W. 810, 25 L. R. A., N. S., 449.

"While it may properly be urged that there can be no sale without a purchaser, that the purchaser contributes as much to the violation of the law as the vendor, it must be borne in mind, however, that the intention of the vendor is different from that of the detective vendee. The object of the vendor is with criminal intent to violate a law of the state, and that of the vendee to determine whether the defendant is engaged in such violation, not to encourage, but to discourage, the commission of the offense; not to conceal and cover, but to disclose the violation of the law. There is absent the community of motive between the vendor and vendee in such cases which is necessary to constitute one an accomplice. Of course the rule here announced would not apply if the evidence disclosed, as it does in some cases, that it was the purpose of the detectives to invite or solicit the commission of an offense as distinguished from a bona fide attempt to ascertain whether a party is engaged in an unlawful business." *State* v. *Jenkins,* 66 Mont. 359, 365, 213 P. 590, 592.

Professor Wigmore, in his valuable work on Evidence, Vol. 4, 2d Ed., 2060, suggests the following test: "When the witness has made himself an agent for the prosecution before associating with the wrongdoers or before the actual perpetration of the offense, he is not an accomplice; but he may be, if he extends no aid to the prosecution until after the offense is committed."

The witness was employed by the Commonwealth for the specific purpose of detecting violations of the statute regarding alcoholic beverages. In the performance of his

duty and without undue solicitation, he ascertained that the accused was fully equipped to make illegal sales of whiskey. The accused took advantage of the opportunity offered and made an illegal sale of an intoxicating beverage to the witness, who preserved it for the purpose of using it as evidence against the seller. These facts exonerate the witness of any criminal liability.

Under the circumstances, the witness is what is generally termed a "feigned accomplice." Such feigned accomplices who act strictly within the scope of their employment are not held by the majority of courts to be accomplices in the sense that their uncorroborated testimony will not support a conviction, nor should their testimony be condemned as unworthy of belief by the trial judge. For authorities supporting this view see: *Stevens* v. *State,* 133 Tex. Cr. R. 333, 110 S. W. (2d) 906; *People* v. *Calvert,* 93 Cal. App. 568, 269 P. 969; *Stone* v. *State,* 118 Ga. 705, 45 S. E. 630, 98 Am. St. Rep. 177; *Commonwealth* v. *Earl, etc.,* 91 Pa. Super. 447; *State* v. *Hoxsie,* 15 R. I. 1, 22 A. 1059, 2 Am. St. Rep. 838; 14 Am. Jur., p. 843, section 116 and notes.

We find no reversible error in the record.

*Affirmed.*