### EARL WILSON v. STATE.

No. A-9512.  June 23, 1939.
(92 P. 2d 625.)

J. Q. A. Harrod and Laynie W. Harrod, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., and E. W. Brown, Asst. Co. Atty., both of Oklahoma City, for the State.

BAREFOOT, J. The defendant was charged in Oklahoma county with the crime of destroying insured property; was tried, convicted, and his punishment left to the court, who sentenced him to serve a term of two and one-half years in the penitentiary, and he has appealed.

This charge grew out of the burning of defendant's automobile. His conviction was based upon the testimony of an accomplice, Leslie O'Neal, who the state contended was employed by defendant to burn the car, a Ford V-8. It is contended by the defendant that the evidence is not sufficient to corroborate the accomplice, Leslie O'Neal, and is insufficient to support the verdict.

We have carefully read the record, and will say that the evidence is of such a nature that we are sure it gave worry to the jury in determining their verdict, as it has to the court. The evidence of the witness O'Neal, who pleaded guilty and was sentenced to serve a term of one year in the penitentiary, was to the effect that he and defendant lived in adjoining houses; that some time prior to July 1, 1937, the defendant saw him and told him if he would take the wheels and tires from his car and sell them, he would give him one-half of the proceeds; that during the night he did this, but the officers came by early the next morning and notified defendant of the condition of his car, and the plans were frustrated. The defendant secured the wheels where he had hid them, and replaced them on his car. The officers, after leaving, returned in a short while and found defendant replacing the tires on the car. He claimed to have recovered them from a boy who had taken them. That two days later, and on July 1, 1937, he saw defendant and a negro man by the name of Jesse Anderson in defendant's

car at 624 East Reno. That defendant called him out, and in the presence of Anderson asked him if he wanted to make some money, and he asked what it was, and defendant told him he wanted him to "strip his car down," and drive it out and burn it up. That defendant asked him about a key, and he told him where he could have one made. That defendant and Anderson left and were gone about 20 minutes, when defendant returned alone, and he and the witness drove in defendant's car to the A & A Locksmith and Bicycle Shop, and witness took the key and had one made, defendant remaining outside, but paying for the making of the key. He further testified that arrangements were made later in the evening whereby it was agreed that defendant would attend the last show at the Aldridge Theatre, park his car, and the witness was to drive the same away and burn it. He further testified that he got the car, hired a negro boy, whom he had known in West Texas, and whose name he did not know. He gave him a quarter to follow him and paid for a meal. That he parked the car out in a field two and one half miles northeast of the Taylor Home, and returned to the city, and that about 1:30 he saw defendant at a pool hall where they were shooting dice, and he winked at him, and defendant followed him to the street, and he told defendant what he had done with the car, and that he and defendant went in witness' automobile to where the car was and they took the wheels off and hid them, and then put gasoline and weeds on the car and burned it up. They returned to the city in the car of the witness O'Neal. The car was found at this place the next morning where it had been practically destroyed by fire. The tires were found close to where the car was parked.

The defendant, as a witness in his own behalf, denied all of the evidence related by the witness O'Neal. He maintained that his car was stolen while he was attending the theatre with a friend; that when they returned to get the car it was gone; that he first looked for a colored officer, but could not find one, and that his brother-in-law took

him to the police station, and he reported the theft there at about 11:30. He is corroborated in these statements by Cecil Mumford, who accompanied him to the show, and by the officers. He claimed he returned to his home about 11:30 p. m., and is corroborated in this statement by Cecil Mumford, who accompanied him to near his home, and left him about 11:25 p. m., and that he did not at any time see the witness O'Neal, and did not go with him and burn the car as that witness testified.

If this case rested solely upon the question as to whether defendant returned with the witness O'Neal and helped to burn the car, we would be inclined to believe the evidence of the defendant, and believing that this evidence may not be true, it is, as stated, hard to come to a correct conclusion; but, under the law, if defendant hired the witness O'Neal to burn the car, and promised him one-third of the proceeds received from the insurance company after the indebtedness was paid, and the witness O'Neal burned the car under these circumstances, defendant would be guilty even though he did not participate in the actual burning thereof. Saied v. State, 65 Okla. Cr. 124, 83 P. 2d 605.

From a careful reading of the record and under the law, we find sufficient facts and circumstances that would have justified the jury in finding that the testimony of the witness O'Neal was sufficiently corroborated. Especially is this true as to his having been employed by defendant to burn the car. Without going too much into detail, the evidence shows that the witness Jesse Anderson corroborated the witness O'Neal as to the conversation between defendant and this witness as to his employment to strip the car and burn the same. The evidence revealed that the witness Anderson had been to the penitentiary for grand larceny. The evidence of the officers who found the car stripped two mornings before the same was stolen, and the fact that defendant secured the tires and was replacing them when the officers returned in a short while,

and other circumstances which it is unnecessary to here relate, cause us to find that there was sufficient corroboration of the witness O'Neal to sustain the verdict of the jury.

Under the law it is not necessary that every part of an accomplice's testimony shall be corroborated. It is only necessary that some material part thereof be corroborated, and this may be by circumstantial evidence the same as by direct testimony. Rice v. State, 60 Okla. Cr. 398, 64 P. 2d 1240; Howerton v. State, 65 Okla. Cr. 457, 88 P. 2d 904; Moody v. State, 13 Okla. Cr. 327, 164 P. 676; Varner v. State, 42 Okla. Cr. 42, 274 P. 43; Fortman v. State, 45 Okla. Cr. 23, 280 P. 1109; Underwood v. State, 36 Okla. Cr. 21, 251 P. 507.

The defendant urges that certain evidence was introduced that was prejudicial to his rights. We have examined the same, and are of the opinion there was not sufficient error, if any, to reverse this case.

The defendant in this case presented a strong defense, and if the jury had believed it he would have been acquitted. We are frank to say that the testimony of the witness O'Neal is not such that one should be deprived of his liberty upon his uncorroborated testimony. This case vindicates the statutes, 22 Okla. St. Ann. § 742, St. 1931, § 3071, which requires the state to produce corroborating testimony before it permits a conviction upon the testimony of an accomplice.

From an examination of the record in this case, we find that the witness O'Neal was given a sentence of one year on the recommendation of the county attorney. We have come to the conclusion that justice requires a modification of the judgment and sentence in this case from two and a half years in the penitentiary to a term of one year, and, as so modified, the judgment of the district court of Oklahoma county is hereby affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.