STATE OF WEST VIRGINIA

*v.*

O. E. HUMPHREYS

(No. 9727)

Submitted October 2, 1945. Decided December 11, 1945.

*G. G. Duff,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *Ralph M. Hiner,* Assistant Attorney General, and *Frances Haney Atwood,* Special Assistant Attorney General, for defendant in error.

HAYMOND, JUDGE:

The defendant, O. E. Humphreys, having been jointly indicted with Okey Keenan for the crime of feloniously and burglariously breaking and entering the dwelling house of Mr. and Mrs. Isaac Wilmoth, in the daytime on February 21, 1944, in Nicholas County, West Virginia, was tried, convicted and sentenced to imprisonment in the penitentiary. To review the judgment of the trial court, a writ of error was granted by this Court.

Upon arraignment, and prior to the trial of the defendant, Keenan pleaded guilty to the offense charged in the indictment. At the trial of the defendant, which was held in the Circuit Court of Nicholas County on September 7, 1944, Keenan appeared as the main witness for the prosecution, and the record shows that his testimony was the only evidence introduced by the State which definitely connected the defendant with the crime, or upon which the conviction could be sustained. It is conceded that without the testimony given by Keenan upon the trial, the charge against the defendant must fail, as Keenan was the sole witness, as a participant, to the commission of the crime with which the defendant was charged and to which Keenan confessed his own guilt.

According to Keenan, who testified upon the trial as

the principal witness for the State, he and the defendant, on the morning of February 21, 1944, met at the home of the latter in Wilderness District in Nicholas County. From that place they went to a sawmill operated by a man named Moses, where they helped to roll some logs on a skidway. After a time they started on a tour of a chain of game traps which the defendant had previously set in the woods in that general section. Keenan did not know where Isaac Wilmoth lived until the defendant took him there at the time the offense was committed. When they went to the house and found it empty and locked, the defendant told Keenan he was going in, and both of them did so. The defendant used his knife to spring the lock and in that way opened the door. While they were in the house, where they remained for about fifteen minutes, they ate some food and drank some rum which they found in different parts of the building. Humphreys took a watch, a pair of pliers, a pearl handled knife and a clock key. Neither took the additional articles mentioned in the indictment, which were a neck chain and a gold ring. The defendant gave the watch and the pliers to Keenan, and two or three days later Keenan traded the watch to J. D. Wood, a carrier of a daily newspaper, who lived in Fayette County. After they left the house they went along the road toward Mount Lookout. On the road they met an acquaintance, Alex Amick, who was in his automobile, and he drove them to Legg's Store at Mount Lookout, which was about two or three miles from the Wilmoth home. There they remained until about five-thirty o'clock in the evening, after which time they separated to go home. While at the store the defendant ate some food, but Keenan ate nothing. He was with the defendant all that day, from eight o'clock in the morning until after they left the Legg Store.

The testimony of Keenan as to the commission of the offense was denied by the defendant, and Keenan's statement of the events which occurred both before and after the house was entered was contradicted, in some of the details, by other witnesses in the case.

The defendant testified at the trial in his own defense. His testimony was, in substance, that he had no connection with the crime and that he knew nothing of it until two or three days after it was committed. During the winters of 1943 and 1944, the defendant had a chain of traps in the woods, none of which was on the Wilmoth property. It was his custom each day to visit and inspect the traps. About nine o'clock on the morning of February 21, 1944, he and his eleven year old son, Carl Humphreys, accompanied by Keenan, went on a trip to examine the traps. They looked at some of them and after a time came to field near, but not in sight of, the Wilmoth home. There Keenan said he was hungry and he asked the defendant who lived at that place. The defendant told Keenan that Wilmoth lived there, and Keenan replied that he knew Wilmoth and that he was going there to get something to eat. The defendant told Keenan to continue with the defendant and his son, but Keenan, when informed that they were going about six miles further, refused to accompany them. The defendant and his son left Keenan standing at that place and went on to the traps. In the afternoon, when they returned to the place at which they had earlier parted company with Keenan, they found him standing at or near the spot where they had separated. The defendant asked Keenan if he had eaten at the Wilmoth house, and Keenan replied that he had not because there was nobody at home. Shortly after the defendant and his son rejoined Keenan, the son left them to examine other traps on his way home. The defendant and Keenan then went down a road which leads to Route 51, and after that they went along a creek where they caught a mink. They then encountered Alex Amick, got in the automobile which he was driving, and went with him to Legg's Store at Mount Lookout, where he stopped, and the three got out of the automobile. After they entered the store, the defendant ate some food but Keenan did not, saying that he did not want anything to eat. Later they got in the automobile with Amick, who drove them

.to a place known as "Drunkard's Roost", where they left Amick and went to their homes.

The evidence discloses that a few days after the offense was committed Keenan traded the watch to Wood, who reported his possession of it to an officer. No possession of any of the articles mentioned in the indictment was traced to or fixed upon the defendant by any evidence except the testimony of Keenan. Keenan, upon being questioned, admitted his participation in the crime, and his statement resulted in the arrest and the joint indictment of Keenan and the defendant.

The jury returned a verdict of guilty as charged in the indictment against the defendant. Pending the motion of the defendant for a new trial, Keenan, whose sentence had been deferred, was called into court, and, under oath, completely repudiated his testimony at the trial in which he had implicated the defendant, and admitted that he had committed perjury in so testifying. He exonerated the defendant of any participation in the crime, and gave as his reason for swearing falsely against the defendant before the jury that he was mad at him, that he wanted to get even with the defendant for whipping him some time before the crime was committed, and that he did not decide to tell the truth until he realized that the guilt had been fixed upon him and he was sure he would be punished for it. Keenan did not reveal his possession of the watch until it was traced to him through Wood. During the period between the return of the verdict on September 7, 1944, and the motion for a new trial on September 12, 1944, Keenan and the defendant occupied the same cell or section in the jail and at that time they were friendly.

The testimony of Keenan in which he repudiates his evidence at the trial was transcribed and filed upon the motion of the defendant for a new trial, and is incorporated in the record.

On September 12, 1944, Keenan's application for release on probation was denied and judgment of imprison-

ment in the state penitentiary for a period of from one to fifteen years was entered against him by the court. On November 21, 1944, the court overruled the motion of the defendant for a new trial, confirmed the verdict of the jury, and entered judgment that he be confined and imprisoned in the penitentiary for an indeterminate period.

The defendant assigns numerous errors upon which he relies for reversal. They may properly be considered as embodying four main grounds: (1) The conviction should be set aside because it rests solely upon the uncorroborated testimony of Keenan, an accomplice; (2) it was error to give Instruction No. 3 offered by the State; (3) it was error to refuse Instruction No. 10, offered by the defendant; and (4) the conviction of the defendant being solely dependent upon the uncorroborated testimony of his accomplice, Keenan, his complete repudiation, under oath, before the entry of the judgment, of his testimony before the jury, renders that testimony so incredible and unworthy of belief that it was error for the court to confirm the verdict and enter judgment upon it.

The contention of the defendant that his conviction could not be sustained by the uncorroborated testimony of his accomplice, is without merit. Though in some jurisdictions that rule is recognized and applied, such is not, and never has been, the law in this State. The question first came before this Court in the case of *State* v. *Betsall*, 11 W. Va. 703, decided as long ago as 1877. In the ninth syllabus in that case this Court said in part: "A conviction may be had upon the uncorroborated testimony of an accomplice." That pronouncement has been consistently adhered to in many subsequent decisions of this Court, some of which are, *State* v. *Thompson*, 21 W. Va. 741; *State* v.*Musgrave*, 43 W. Va. 672, 28 S. E. 813; *State* v. *Hill*, 48 W. Va. 132, 35 S. E. 831; *State* v. *McKinney*, 106 W. Va. 299, 145 S. E. 604; and *State* v. *Camp*, 110 W. Va. 444, 148 S. E. 664. This principle is sound in reason and is supported by

the holdings in many other jurisdictions. This Court would not be justified in departing from it and, accordingly, it is approved and reaffirmed.

The issues of law raised by the action of the trial court in giving Instruction No. 3, requested by the State, and in refusing Instruction No. 10, requested by the defendant, should be considered together as they involve the question of the duty of the trial court to advise the jury, in a felony case, that the uncorroborated testimony of an accomplice should be received with caution by the jury. Preliminary to the determination of this point, however, it is appropriate to examine and analyze the two foregoing instructions.

Instruction No. 3 told the jury, in effect, that by corroboration of the testimony of an accomplice, it was not meant that an accomplice must be corroborated as to his whole testimony; that if a portion of his testimony material to the issue was confirmed, or if it appeared that he had testified truthfully in some material parts, the jury may infer that he had testified truthfully as to the matters material to the issue and that the jury might therefore convict on his uncorroborated testimony. This instruction misstates and ignores several principles of law, and the action of the court in giving it was highly prejudicial to the defendant. The first part of the instruction is vague and confusing, and the instruction is objectionable for that reason. The portion of the instruction which told the jury that if the testimony of the accomplice was confirmed in some material parts, or if the jury believed that it was true in some material parts, the jury could infer that the testimony was true in other material parts, assumes, contrary to the fact, that the testimony was corroborated upon the material facts involved in the breaking and entering of the Wilmoth dwelling house, as to which there was no corroboration. 20 Am. Jur. 1090; State v. Hayes, 109 W. Va. 296, 153 S. E. 496. That portion of the instruction also improperly suggests how the jury should weigh and consider the evidence. Nicholas v. Kershner, 20 W. Va. 251.

But there is a fatal defect in the instruction in addition to the defects already mentioned. Since the court, at the instance of the State, undertook to instruct the jury concerning the uncorroborated testimony of an accomplice, and that the defendant could be convicted upon such uncorroborated testimony, the court should have correctly and fully instructed the jury upon that point. This it did not do. Instruction No. 10, requested by the defendant, would have informed the jury that the testimony of an accomplice should be received with great care and caution, and that if the jury believed that his testimony was false, and that he was induced to testify falsely, either by fear of punishment or hope of reward, the jury should disregard his testimony in its entirety. In the form in which it was submitted, the instruction was properly refused because its reference to any inducement to testify falsely by fear of punishment or hope of reward was not supported by any evidence. Keenan, when asked on cross examination if he had been promised anything by the State for testifying, answered that he had been promised nothing. An instruction which is not based on any appreciable evidence of material facts, or which misstates the evidence, should not be given. *State* v. *Hayes*, 109 W. Va. 296, 153 S. E. 496; *State* v. *Newman*, 101 W. Va. 356, 132 S. E. 728. But in view of the action of the court in giving the erroneous Instruction No. 3, as mentioned above, the defendant was entitled to a correct instruction on that point, either by the incorporation of the principle that the uncorroborated testimony of an accomplice is to be viewed with caution in a clearly drawn instruction, offered by the State, to the effect that a conviction may be had upon the uncorroborated testimony of an accomplice, or by its embodiment in a separate instruction. The court, however, did neither.

The law in this State is somewhat confused on the question whether, in a felony case, when the evidence upon which the State depends for a conviction consists of the uncorroborated testimony of an accomplice, it is

proper for the trial court to instruct the jury that it should receive such testimony with caution. In the early case of *State* v. *Betsall*, 11 W. Va. 703, in which a conviction obtained on the uncorroborated testimony of an accomplice was sustained, this Court said, in the tenth syllabus, in discussing such testimony: "While such testimony is suspicious, and emanates from a bad source, yet the jury may believe it, although it is wholly uncorroborated; and in this state it is not proper for the court to give any instruction to the jury as to the weight of such, or any other evidence." After reviewing and discussing at some length authorities to the effect that the testimony of an accomplice is competent and stating that, after the court has cautioned the jury as to such testimony when it is uncorroborated, and the jury convicts upon it, such conviction is legal, this Court, speaking by Judge Johnson, said:

"* * * It seems that in all, or nearly all the cases cited, according to the law and practice governing the courts rendering the decisions, that the Judges were authorized in a criminal case, to charge the jury upon the facts as well as the law of the case. Such is not the law, or practice, either in Virginia or in our own State. In Virginia and in this State, the juries are judges of the law as well as the fact in a criminal case; and while the court may charge the jury as to the law of the case, yet the court is not permitted to charge the jury as to the *weight* of the evidence in any case. Our courts are somewhat peculiar in this respect; but the law has been so held in Virginia from the earliest history of her jurisprudence; and we think it constitutes one of the brightest ornaments thereof. * * *"

The views embodied in the foregoing quotation were referred to and approved in *State* v. *Thompson*, 21 W. Va. 741; *State* v. *Morgan*, 35 W. Va. 260, 13 S. E. 385; and *State* v. *Musgrave*, 43 W. Va. 672, 28 S. E. 813. In the later case of *State* v. *Hill*, 48 W. Va. 132, 35 S. E. 831, this Court, in again approving the rule that the jury may convict on the uncorroborated evidence of an ac-

complice, indicated that, if it had been requested, an instruction which would have cautioned the jury as to the uncorroborated evidence of an accomplice, should have been given by the court, and stated that the accused, not having asked for such an instruction, could not thereafter complain that the verdict was contrary to the law and the evidence. In the opinion the court says:

"* * * The last objection is that the accused was convicted on the uncorroborated evidence of an accomplice, now serving a term in the penitentiary for the same crime. The court was not asked to instruct the jury as to the necessary caution for it to exercise in such a case and the danger of giving credence to such testimony, but the jury was permitted to exercise its own judgment with regard thereto, and the court refused to disturb the verdict. This plainly comes within the case of the *State* v. *Betsall*, 11 W. Va. 703. While the uncorroborated evidence of an accomplice, under the circumstances as shown, has always been viewed with suspicion and doubt, yet where the accused asks no instructions with regard thereto, and leaves the whole matter of law and evidence for the jury to determine, he cannot afterwards complain that such verdict was contrary to the law and evidence. If he thought the jury was not fully advised as to the law, he should have had the court instruct them, otherwise it will be presumed that it was fully informed, and gave to the accomplice's evidence only such weight as the law authorizes. * * *"

In the more recent case of *State* v. *Hammond*, 96 W. Va. 96, 122 S. E. 363, in which the defendant was indicted, tried and convicted, for unlawfully and feloniously owning and operating a moonshine still, and in which the evidence of an accomplice was corroborated, this Court departed from the above mentioned holding in the *Betsall* case, and adopted the rule which requires the giving of cautionary instructions upon the uncorroborated evidence of accomplices. In the fifth syllabus of that case this Court said: "While it is true that in the trial of a criminal case the uncorroborated testi-

mony of accomplices against the defendant is to be viewed with caution, and the jury should upon request be so instructed, it cannot be said that the same principle applies when such testimony is corroborated by other evidence and circumstances in the case, and in such case the omission of cautionary instructions is not error." Though the *Betsall* case was not mentioned or discussed in the opinion, and though the *Hammond* case did not involve the question of the uncorroborated testimony of an accomplice, as the opinion makes clear, it is manifest that the Court gave adherence to the doctrine that a cautionary instruction should be given upon request when the evidence of the accomplice is uncorroborated, and that it made that position clear by incorporating it in the syllabus. Though this Court has constantly safeguarded, and continues to safeguard and protect, the province of the jury against any encroachment of the court in determining the weight and the credibility of the evidence, it has, from time to time, and properly, recognized some exceptions to that essential rule. Some instances might be given, but only one is necessary. In the case of *Jarrett* v. *Jarrett*, 11 W. Va. 584, and again in the case of *Kerr* v. *Lunsford*, 31 W. Va. 659, 8 S. E. 493, both of which have been consistently followed in this jurisdiction, this Court expressly approved an instruction given to the jury, upon an issue of *devisavit vel non*, to the effect that the evidence of witnesses who were present at the execution of a will is entitled to peculiar weight, and especially so in the case of attesting witnesses. The practice in Virginia, referred to in the opinion in the *Betsall* case, as to cautionary instructions relative to the uncorroborated testimony of an accomplice, doubtless existed when that case was decided. Since that decision, however, the Virginia Court has, in a number of cases, adopted and applied the principle of giving cautionary instructions in cases in which the testimony of an accomplice is involved; and that rule is firmly established in that jurisdiction. *Hunt* v. *Com.*, 126 Va. 815, 101 S. E. 896; *Crosby* v. *Com.*, 132 Va. 518, 110 S. E. 270; *Simpson* v. *Com.*, 135 Va. 746, 115

S. E. 392; *Faulkner* v. *Town of South Boston*, 139 Va. 569, 123 S. E. 358; *Guthrie* v. *Com.*, 171 Va. 461, 198 S. E. 481; *Watkins* v. *Com.*, 174 Va. 518, 6 S. E. 2d 670. The law on this point in that State, as announced and applied in the cited cases, is that conviction for a crime may be had upon the uncorroborated testimony of an accomplice, but the jury must receive and act upon such testimony with great caution. In *State* v. *McKinney*, 106 W. Va. 299, 145 S. E. 604, a felony case, this Court said in the opinion, citing *State* v. *Hammond*, 96 W. Va. 96, 122 S. E. 363: "It is true that we have held that the uncorroborated testimony of an accomplice must be received with great caution and the jury should be so instructed upon request."

The principle that, though a conviction may be had upon the uncorroborated testimony of an accomplice, such testimony must be received with caution, and that the jury in a criminal case, upon request, should be so instructed, is based on sound reason and is sustained by the decisions of the appellate courts in many jurisdictions. 16 C. J. 694; 22 C.J.S. 1383, 1387; *Rex* v. *Tate*, 2 K. B. 680, 15 Ann. Cas. 698 and Note. It is the law of this State; and in so far, but in so far only, as the tenth syllabus and parts of the opinion in *State* v. *Betsall*, 11 W. Va. 703, and the statements in the opinions in *State* v. *Thompson*, 21 W. Va. 741; *State* v. *Morgan*, 35 W. Va. 260, 13 S. E. 385; and *State* v. *Musgrave*, 43 W. Va. 672, 28 S. E. 813, are inconsistent with this holding, they are disapproved. In the circumstances disclosed by this record as heretofore pointed out, it was reversible error for the trial court not to give to the jury correct instruction or instructions embodying and applying this important principle of law.

Discussion of the assignment of error dealing with the repudiation by Keenan of his testimony before the jury upon the trial would necessarily involve consideration of his conflicting statements, which is properly a matter for jury determination upon a retrial of the case. As the judgment must be reversed and the case

remanded for a new trial, it is inadvisable, as well as unnecessary, to express any opinion concerning that question upon this writ of error.

The defendant complains of the action of the court in giving, over his objection, Instruction No. 2, requested by the State, and the refusal of the court to give Instruction No. 9, requested by the defendant.

Instruction No. 2 told the jury, in substance, that proof beyond all reasonable doubt did not necessarily mean proof without contradiction or conflict and that if, after considering all the evidence and the circumstances, the jury had an abiding conviction of the truth of the charge in the indictment, the requirement of proof beyond all reasonable doubt would be satisfied. The court did not commit error in so instructing the jury.

Instruction No. 9 also dealt with reasonable doubt as presented from the standpoint of the defendant. As the substance of the instruction was covered by other instructions which were given by the court, its refusal by the court was not error. The duplication of instructions is unnecessary and undesirable. *Robertson* v. *Hobson*, 114 W. Va. 236, 171 S. E. 745.

The judgment of the Circuit Court of Nicholas County is reversed, the verdict set aside, and a new trial awarded.

*Reversed and remanded.*