**Jerry BOYD, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A-12191.**

Criminal Court of Appeals of Oklahoma.

Sept. 21, 1955.

Rehearing Denied Nov. 23, 1955.

John F. Booth, Jr., Homer Thompson; John Connolly, Oklahoma City, for plaintiff in error.

Mac. Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Jerry Boyd, plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the district court of Oklahoma County with the crime of "Possession of marihuana, after former conviction of a felony". A jury being waived, the defendant was tried before the court, who found him guilty, and on May 26, 1954 sentenced accused to a term of six years in the State Penitentiary at McAlester. The court was very lenient as to sentence in view of Tit. 63 O.S.A. § 452, as amended, Laws 1953, p. 316, § 2. See also Tit. 63 O.S.1951 § 451.

The record discloses that at trial defendant was represented by counsel of his own choosing, John C. Booth, Jr., who prior to trial filed a motion to suppress certain evidence, and who represented the defendant during the trial. Mr. Homer F. Thompson, public defender, represented defendant at the time of pronouncement of judgment and sentence, and filed a brief in this court on appeal. Also John Connolly, Esq., attorney, appeared in behalf of defendant at time of oral argument in this court, and was by this court permitted to file in co-operation with prior counsel, an additional brief in behalf of defendant.

We have carefully considered the different views of counsel for the defendant as to why the case should be reversed, as well as the views of the Attorney General. Perhaps a summary of the evidence at this time will clearly develop the answer to the issues raised. Such detailing, perhaps, may be justified by reason of the fact that the violation of constitutional rights are at issue. Counsel for defendant had on the day of and prior to trial filed a motion to suppress the evidence, the pertinent portion of which reads:

"(1) That the affidavit for search warrant and the search warrant were improperly executed and issued for the reason that the date shown thereon was not in fact the date of actual execution and issue.

"Defendant specifically disclaims any ownership of the evidence, to-wit: 46¼ grains of marihuana, but bases his right to attack said search warrant upon the ownership of the premises searched, to-wit: a certain 1950 two-door Studebaker automobile, 1953 license #1-59988.

"Wherefore, defendant prays that the evidence hereinbefore mentioned be suppressed."

There is nothing in the record to indicate whether or not the motion was ever considered by the court. No contention was made at time of oral argument or in briefs that it was.

The evidence on behalf of the State discloses that around 8 o'clock on the evening of January 14, 1954 deputy sheriffs E. A. Capshaw and Sherman Brown, in company with two Oklahoma City police officers, Cliff Roberts and Timmy Doyle, went to the home of one Ray Bolling, at 5645 Northwest 58th Street, Oklahoma City, hiding in different places on the outside of the house and apparently to await the expected appearance of the defendant Jerry Boyd.

Officer Capshaw testified that he first saw the defendant about 8 o'clock that evening when Boyd drove up to the home of Ray Bolling in a car by himself and got out and went into the house. At that time the witness was just a little to the northwest of the house behind a barbecue pit and fence, about 15 feet from the west door of the house. After Boyd had entered the house, the witness came out from his hiding place and ran to the north window on the west side of the house. While standing there the witness heard a conversation between Bolling and the defendant. Bolling asked the defendant if he had "brought the stuff", and defendant answered, "Yes, you can find it under the left hand side front seat of the car". One Paul Downey was in the house with the defendant and Bolling. Officer Capshaw said he then saw Bolling come out of the house and go to the left-hand door of Boyd's car, open the front door of the car and lean over. He said, "I couldn't tell where he reached, but he leaned over without getting in the car and immediately turned around and went back in the house." The car was parked about five feet south of the west door, which was about 15 feet from where the witness was standing. They had the lights on in the house and the lights reflected through the windows onto the car. Shortly after Bolling had gone back into the house, he rolled a cigarette and passed it around and all three of the

boys smoked off of just the one cigarette. About an hour and a half later, the three boys left the house in defendant's car and returned about 11:30 P.M. They came back carrying a sack which contained barbecue. The officers crashed the door in and entered the house. The three boys were then sitting on the floor playing poker. They searched the house and found a small snuff can, which was lying on the floor behind the defendant. The can was later shown by chemical analysis to contain marihuana. The witness said, "I asked who it belonged to, and neither one of them would claim it."

At this point the record shows that Mr. Capshaw concluded that he had enough evidence for obtaining a search warrant to search the car, left the boys in custody of the other officers while he went to Bethany to procure such search warrant from Justice of the Peace Mansfield to search Boyd's car. Officer Capshaw further testified:

"Q. (By Mr. Hamil) Then what did you do after acquiring the search warrant? A. When I returned from Bethany Sherman Brown and Timmy Doyle and myself went out to search the car. Well, we found a plastic vial approximately one inch in diameter and about three inches long.

"Q. Did you make service of the search warrant? A. Well, I presented it to Jerry Boyd, personally, which he claimed,—

"Q. Well, what happened next? A. We went out to search the car, and under the left hand side of the front seat, lying loose under there was this plastic vial which looked like marihuana, and I presented it to the state laboratory, and their test later showed what it contained.

"Q. Who did you present it to at the state laboratory? A. I presented it to Taylor Roberts [Rogers], the state chemist.

"Q. Do you know what size container it is? A. Approximately an inch in diameter and three inches long, kind of medicine container, plastic.

"Q. Then what did you do next? A. We took Jerry Boyd and Ray Bolling, brought them to the county

jail and booked them for possession of marihuana."

Cliff Roberts, narcotics officer, Oklahoma City Police Department, testified that he was present at the home of Ray Bolling on the night of January 15, 1954 and assisted the other officers in making the investigation. His testimony was the same in substance as that given by Officer Capshaw, except that the snuff can was found in the dresser drawer by the officers, and not on the floor where the boys were sitting when the officers entered the house.

It was stipulated that the defendant was convicted July 6, 1939 in the district court of Oklahoma County of the crime of grand larceny.

Taylor Rogers, chemist for the State Department of Health, testified that on January 16, 1954 he received from Officer Capshaw a one-ounce plastic bottle containing dry green-colored vegetable material, which was shown by chemical test to contain 46½ grains of marihuana.

Officer Capshaw was recalled and after identifying the plastic container he stated that it was the same plastic bottle he took from defendant's Studebaker automobile on the night of January 15, 1954.

This completed the evidence for the State. The defendant interposed a demurrer to the evidence, on the ground that "the State failed to produce evidence sufficient to connect the defendant with the marihuana which is alleged in the information." The demurrer was overruled and the defendant excepted.

The defendant did not testify, but he did offer the testimony of Jess Harris, his stepfather, and of Doris Bolling, wife of Ray Bolling.

The officers had testified to watching the defendant and his two friends through a window in the Bolling home. Jess Harris testified to making certain measurements around the home, and particularly of the distance from the bottom of the east window in the living room to the ground, which he said was seven feet. The inference would be that ordinarily a man could not watch through such window as the officers testified they did. The officers had testified to running and hiding when the occupants became suspicious and turning on the outside lights. Witness testified to distances around the premises to points where one could hide as being greater than testified to by the officers.

Doris Bolling testified that she was not living at 5645 Northwest 58th Street on the night of her husband's arrest; that she lived there just a week before that date. Apparently for the purpose of raising a doubt as to whether the officers could see into the house as they testified they could without difficulty, she testified that she was familiar with the interior furnishings of the house, such as curtains and drapes, and testified to such curtains and drapes being in place at the time. She could not testify of course whether they were so fixed at the time in question as to obstruct the view of the officers.

At this point both the defendant and the State rested. Counsel for defendant interposed a motion to discharge defendant on the ground that the evidence was insufficient to sustain a conviction, which motion was overruled, and defendant excepted.

Analyzing the above stated facts, several things are immediately apparent: (1) That the search of the Bolling home was illegal, the officers not acting under authority of a search warrant or warrant of arrest;[1] (2) The search of the person of the defendant Jerry Boyd was likewise illegal for the same reason;[2] (3) While the search of the automobile of Jerry Boyd resulting in the discovery of the marihuana on which the within prosecution was based, was made under authority of a search war-

1. Art. II, § 30, Okl.Const.; Walker v. State, Okl.Cr., 270 P.2d 1107; State v. Coburn, 68 Okl.Cr. 67, 95 P.2d 670. The officers were trespassers on the property at 5645 NW 59th Street, Oklahoma City, and while only the occupant Bolling could complain, the individual in the home so wrongfully searched could complain of the unreasonable individual search and of the illegal arrest.

2. Art. II, § 30, Okl.Const. Supported in principle by Sanders v. State, Okl.Cr., 287 P.2d 458.

rant, the defendant was held under illegal arrest for around an hour and a half while the warrant was being obtained, the search in effect commenced when defendant was illegally restrained and proceedings were commenced to search his car, and for such reason the search of the vehicle was illegal;[3] and (4) the fact that the search turned up evidence sufficient to sustain a charge against the operator of the motor vehicle (and we do find the evidence sufficient), would not make legal a search otherwise illegal.[4]

Having reached the above conclusions, the final question determinative of the case is whether or not the defendant waived his constitutional right, Art. II, § 30, Okl. Const., to be secure in his person, house and papers and effects against unreasonable search and seizure. In Edwards v. State, supra, this court said that the constitutional provision in question applied to one's automobile. Constitutional rights may be waived. See Sanders v. State, Okl.Cr., 287 P.2d 458, and cases cited.

The Attorney General contends that the defendant waived the illegal manner in which the State obtained possession of the contraband marihuana that was the key to his conviction. It is urged:

"We contend the record fails to show that counsel for defendant ever presented to the trial judge the motion to suppress evidence. No evidence was offered in support of the motion prior to the trial of the case on its merits. During the course of the trial, no objections or exceptions were made to the testimony of any of the State's witnesses relating to the alleged illegal search and seizure of marihuana found by the

officers in defendant's automobile. The record fails to show that the question of illegal search and seizure was ever raised at any stage of the proceedings, except the mere filing of the motion for a new trial. Neither was it raised by defendant's demurrer to the evidence. Upon filing the appeal in this court, the question of illegal search was raised for the first time by setting forth in paragraph six of the petition in error that '(6) The court erred in its failure to sustain defendant's motion to suppress the evidence.' "

We have carefully checked and rechecked the record as to the Attorney General's statement of factual matters, and find that the record supports his thesis. No contrary contention as to the record was made by defense counsel at time of oral argument or in supplemental brief subsequently filed in this court on August 3, 1955.

Apparently defendant filed his motion to suppress and thereafter prior to trial of the case on its merits, failed to introduce any evidence in support of the allegations of the motion. From that portion of the motion quoted in the beginning, it is seen that it only went to the sufficiency of the affidavit for search warrant and search warrant, and disclaiming ownership of the marihuana involved, which latter matter would be involved in the trial on the merits. Neither the affidavit nor the search warrant complained of being introduced into evidence, we must assume that both were sufficient. The burden was on defendant to sustain the allegations of his motion and demonstrate the illegality of the

3. Edwards v. State, 83 Okl.Cr. 340, 177 P.2d 143; Hoppes v. State, 70 Okl.Cr. 179, 105 P.2d 433. In Thomas v. State, 25 Okl.Cr. 409, 220 P. 976, paragraph 1 of the syllabus, it is said: "Where an unauthorized search and seizure is commenced and in progress, the issuance of a search warrant for the purpose of making valid that which at its inception was illegal will afford no protection to the officer making such search and seizure. Evidence so obtained should be excluded on timely objection to its in-

troduction." See also: Wallace v. State, 49 Okl.Cr. 281, 294 P. 198; Bohannon v. State, 66 Okl.Cr. 190, 198, 90 P.2d 675; Murphy v. State, 194 Tenn. 698, 254 S.W.2d 979; 37 Am.Jur. p. 550, Search and Seizure; Gorman v. State, 107 Tex.Cr.R. 250, 296 S.W. 533; Leason v. State, Okl.Cr., 286 P.2d 288.

4. Edwards v. State, supra; Leason v. State, supra; Simmons v. State, Okl.Cr., 277 P.2d 196; Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649.

search. Wilson v. State, Okl.Cr., 268 P.2d 585; Sanders v. State, supra.

In the case of Stevens v. State, Okl.Cr., 274 P.2d 402, 404, defendants failed to file a written motion to suppress prior to trial and produce evidence in support thereof. No search warrant was involved. Following the statement to the jury by the county attorney, defense counsel interposed a verbal motion to suppress, based on statements made by the county attorney to the jury.

In the body of the opinion in the Stevens case we said:

"A motion to suppress is usually interposed where it is claimed that the affidavit for a search warrant is void, or that the search warrant is void, or defective. However, where the defendant, as here, interposes an oral objection to the introduction of evidence outlined by the county attorney in his opening statement, on the ground of illegal search and seizure, and again objects to the introduction of the contraband on the ground of illegal search and seizure even though the defendants offer no evidence if the evidence of the State so objected to discloses an unlawful search and seizure, it would be the duty of the court to strike from the consideration of the jury such objectionable evidence. So that in the within case, if the search and seizure was illegal it would be the duty of the court to reverse the case, as such evidence stricken would leave the State with insufficient evidence to make out a case."

While we have said " 'The constitutional provision guaranteeing one immunity from unlawful search and seizure belongs only to the person, effects and premises of the party whose property is searched, and one accused will not be heard to object that the search of the property or premises of some third person is a violation of his constitutional rights' ", Micklick v. State, Okl.Cr.,

285 P.2d 462, 466, in the within case defendant could have complained about his illegal arrest and objected to all evidence concerning his arrest, search of his person, detention and facts of the subsequent search of his automobile, which in effect was forcibly detained while a warrant was being obtained. But the record shows no objections interposed.

In White v. State, 81 Okl.Cr. 399, 165 P.2d 151, in the fourth paragraph of the syllabus, we said:

"Alleged errors occurring upon the trial of a case must be raised and urged before the trial court and passed upon by said court before this court will consider it on appeal, unless the error assigned raised a jurisdictional question."

In the within case, where a jury was waived, defendant should not only have set out the matters that he did in his motion to suppress, but also the fact of his arrest and detention while the officers were obtaining a search warrant for the search of his automobile. He should then, prior to trial, have assumed the burden of proving the allegations of his motion. For the purpose of shortening the proceedings, where a jury has been waived, it is usually stipulated that the evidence heard on motion to suppress may be considered as the evidence on trial. Additional witnesses may also be heard at trial.

It must be kept in mind that the purpose of the enactment of the constitutional amendment, Art. II, § 30, was not to protect the guilty, but to protect the innocent.[5]

After petition in error and casemade were filed in this court defendant caused to be filed herein an affidavit of Joe Ray Bolling in which factual matters are set out that if set up in defense in the trial court and if true, would have made the officers guilty of entrapment, or instigators of the crime

5. See dissenting opinion of Wiest, J., in People v. Case, 220 Mich. 379, 190 N.W. 289, 27 A.L.R. 686, and also Byard v. United States, 273 U.S. 28, 47 S.Ct. 248, 250, 71 L.Ed. 520, in which the background of the Fourth and Fifth Amendments to the Constitution of the United States is delineated. The wording of Art. II, § 30, of the Okla.Const. is similar to the Fourth Amendment to the Federal Constitution. A better understanding of the constitutional provisions in question would come about by a study of the historical background.

charged.[6] But such ex parte affidavit may not and will not be considered, by reason of failure to raise the issue in the lower court. White v. State, supra.

The evidence in the within case, unobjected to, showed without doubt that defendant had in his automobile 46¼ grains of marihuana, as charged in the information, and that he had previously been convicted of a felony. The evidence as to the search and seizure of the contraband was without objection.

The judgment of the court, therefore, must be, and is sustained.

JONES, P. J., and BRETT, J., concur.

6. Finley v. State, 84 Okl.Cr. 309, 181 P.2d 849; Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A. L.R. 249; Ryles v. United States, 10 Cir., 172 F.2d 72, vacated 336 U.S. 949, 69 S.Ct. 882, 93 L.Ed. 1104; Ryles v. United States, 10 Cir., 183 F.2d 944, Id., 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 637. See Wilson v. State, 66 Okl.Cr. 322, 92 P.2d 625; Kutz v. State, 85 Okl.Cr. 423, 188 P.2d 703. Tricks and traps may be used. People v. Dunnigan, 163 Mich. 349, 128 N.W. 180, 30 L.R.A.,N.S., 940; 20 Am.Jur., Evidence, § 400. See also 15 Am.Jur., Cr.Law §§ 335, 336; Guthrie v. Commonwealth, 171 Va. 461, 198 S.E. 481, 119 A.L.R. 683; State v. Marquardt, 139 Conn. 1, 89 A.2d 219, 31 A. L.R.2d 1206.